OPINION
{¶ 1} Defendant-Appellant, Lee Ann Smith ("Lee Ann"), appeals a Marion County Juvenile Court judgment, granting Marion County Children's Services ("MCCS") permanent custody of Justin Smith ("Justin"). On appeal, Lee Ann contends that the juvenile court erred in finding that there was clear and convincing evidence that an award of permanent custody to MCCS was in the best interest of Justin and that MCCS did not make reasonable efforts to reunite her and Justin. Finally, Lee Ann contends that she received ineffective assistance of counsel. Finding no reversible error, the judgment of the trial court is affirmed.
 {¶ 2} On April 24, 2001, Lee Ann gave birth to Justin. Previously, Lee Ann had been diagnosed with bipolar disorder with psychotic factors and schizophrenia factors and bipolar disorder with depression. Additionally, she has taken various medications for that disorder. During Lee Ann's pregnancy with Justin, she discontinued use of her medications, because of her doctor's fears about the development of the fetus. When Justin was born, Lee Ann did not resume taking her medications because she was advised by her pediatrician that she should not resume those medications while breastfeeding.
 {¶ 3} On August 12, 2001, MCCS removed Justin, based upon Lee Ann's noncompliance with her medications. Subsequently, the trial court found Justin to be a dependent child and granted MCCS temporary custody. On August 13, 2001, Lee Ann was involuntarily hospitalized at Twin Valley, a state hospital, because she was noncompliant with her medication and having a psychotic episode. Lee Ann remained at Twin Valley until September 27, 2001.
 {¶ 4} Upon being released from Twin Valley, Lee Ann was supposed to live with her mother; however, she moved into her own apartment. Again, Lee Ann failed to stay compliant with her medications, and, as a result, she was unable to maintain either her apartment or her visits with Justin. In November of 2001, after arriving late to a visit and not being allowed to see Justin, Lee Ann became very upset. This incident lead to her again being involuntarily hospitalized at Twin Valley. Lee Ann remained at Twin Valley until February of 2002.
 {¶ 5} In October of 2001, following the initial removal, a case plan was filed by MCCS. The case plan listed the following family strengths:
1. Justin has no known disabilities or delays at this time.
 2. Justin has no emotional or behavioral problems.
 3. Justin is healthy baby and having his basic needs met infoster care.
 4. Lee Ann did not abuse or neglect Justin.
 5. Lee Ann had appropriate housing prior to herhospitalization.
The case plan listed the following family concerns:
1. Lee Ann did not comply with her doctor's orders or CaseManager's request to stop breast feeding, so she could be putback on medication, which Dr. Sansait requested. She is diagnosedwith BiPolar (sic.) Disorder and without taking the medicationsshe went into a Manic phase, in which she was belligerent andhostile. She refused treatment and was eventually admitted toTwin Valley Behavioral Health Care in Columbus. She was probatedand is receiving Haldol injections against her own wishes andwants out of the facility. She is continuing to refuse all of hermedications at Twin Valley. Lee Ann has been diagnosed with otherdisorders in the past and has a history of being noncompliantwith her medications, leading to her hospitalization atpsychiatric treatment centers more frequently.
 2. Justin is too young to protect himself.
 3. Lee Ann has a history of victimization of other children.She does not have custody of three of her other children. Two ofthese children were given up for adoption through a PermanentVoluntary Surrender at Juvenile Court.
 4. Lee Ann has a history of being abused and neglected as achild.
 5. Lee Ann has been on probation and has a history ofinappropriate contacts with law enforcement.
 {¶ 6} To comply with the case plan, Lee Ann was required to be compliant in the treatment of her illness, by following all doctors' orders, by taking all medications and by cooperating with all counselors as well as her case manager. Additionally, Lee Ann was required to not abuse Justin. To comply, Lee Ann was to attend supervised visitations at MCCS, at which time she was to meet all of Justin's needs. Lee Ann was also required to learn to understand and deal with the effects of her own childhood abuse and neglect, by enrolling in individual counseling and following the recommendations of her therapist. Finally, Lee Ann was required to not engage in or be around people engaging in illegal activities.
 {¶ 7} In April of 2002, Justin was moved from foster care into the custody of Eve and David Dominy (hereinafter referred to jointly as the "Dominys"). The Dominys are the aunt and uncle of Lee Ann. At the time Justin was moved to their custody, the Dominys had adopted Lee Ann's two oldest children, Christopher and Jonathan, and held a shared parenting agreement with Lee Ann for her eight year old son, Brock.
 {¶ 8} In August of 2003, MCCS filed a motion for permanent custody. In November of 2003, the trial court held a hearing on the matter. At the hearing, MCCS presented the testimony David Wilhelm, of Marion Area Counseling Services, Jane Roberts, Lee Ann's Adult Caseworker, Randall Lee, Justin's caseworker, Abigail K. Lama-Gaffney, an outpatient counselor at Marion Area Counseling Center, and Incommodes Sansait, Lee Ann's former psychiatrist. Lee Ann presented the testimony of Japan Chittiprolu, Lee Ann's present psychiatrist, Maria Lisa Hypes, Lee Ann's guardian, Sandra Buckley, Lee Ann's LPN/medication case manager, and Annelle Elliot, Lee Ann's employment specialist from the Marion Area Counseling Center. Lee Ann also testified on her own behalf. Additionally, the Dominys participated as parties to the proceedings pursuant to R.C. 2151.424(A) and Juv. R. 2(x). The Dominys presented no witnesses at the hearing, but did actively engage in the examination of all the witnesses.
 {¶ 9} David Wilhelm, testifying on behalf of MCCS, stated that he had understood Lee Ann's history and had known her since she was eighteen. He testified that he was the person who had her involuntarily hospitalized in both August and November of 2001. He also testified that she had previously been hospitalized in 2000, 1996 and 1988 and that each time she was hospitalized it was based on her being noncompliant with her medications. Wilhelm went on to testify that her hospitalizations in 2001 were also directly linked to her being noncompliant with her medications.
 {¶ 10} Wilhelm also testified about Lee Ann's need to be medicated for the rest of her life and the chances of her compliance with that need. According to Wilhelm, a person's past behavior is the best predictor for future compliance. Additionally, Wilhelm stated that while some people are able to live a totally medication compliant life, approximately ninety percent of people diagnosed with an illness like Lee Ann's will become noncompliant with their medications at some point. He went on to explain that, because it often takes people a long time to accept their illness and the process of being compliant with their medications, it is not uncommon for an affected individual to stop taking their medications at some point.
 {¶ 11} Finally, Wilhelm testified that neither Lee Ann's illness, by itself, nor her medications would prevent her from parenting. However, Wilhelm went on to state that a person diagnosed with an illness similar to Lee Ann's would only have the ability to parent if both their symptoms and medications were stabilized. Wilhelm also testified that Lee Ann had been compliant with her medications since her February 2002 release from Twin Valley hospital. He testified that he did not believe that there is a threat of direct physical harm to Justin with Lee Ann's situation. However, he stated that he did have concerns about the possibility of neglect, because if Lee Ann were to stop being compliant with her medications her judgment would be impaired. Finally, he stated that he only knows of one person, with an illness similar to Lee Ann, who is raising a child and that she does so with the help of her parents.
 {¶ 12} Next, Jane Roberts, Lee Ann's adult case manager, testified. Roberts testified that she has been working with Lee Ann since February of 2002. Roberts testified that as Lee Ann's case manager she provides support for Lee Ann in whatever she may need. Specifically, Roberts stated that she has helped Lee Ann with transportation to and from visits with both Justin and Broc, she has helped Lee Ann with her medication and has helped her with other basic needs. Additionally, Roberts stated that she helped Lee Ann contact the necessary people so that Lee Ann was able to start school.
 {¶ 13} Roberts also testified about Lee Ann's relationship with Justin. According to Roberts, Lee Ann has a good relationship with Justin. Additionally, she testified about a birthday party she had attended for Justin. Roberts stated that Lee Ann planed the entire party and that it went well. She also stated that Lee Ann had told her that she wants to obtain a higher education so that she can provide better for Justin.
 {¶ 14} Finally, Roberts opined that while she believed that both Lee Ann and Justin would benefit from more visitation, she was not sure that Lee Ann could deal with having full custody of Justin. Roberts also stated that she and Lee Ann had discussed how Lee Ann would have to change her life if she were to get full custody of Justin. Nevertheless, Roberts stated that she was in no position to give an opinion on how Lee Ann would be in a full custody situation, due to her limited interaction with Lee Ann as a parent.
 {¶ 15} Randall Lee, an ongoing case worker at MCCS, testified that he has known Lee Ann since 1995, when Brock was removed from her custody. He testified that he has been Justin's case worker since his removal in August of 2001.
 {¶ 16} Lee stated that after Justin's removal he went to the hospital to meet with Lee Ann and that she was very disoriented. Lee also testified about the visitation incident that led to Lee Ann being hospitalized the second time. Additionally, he stated that at the time Lee Ann's other children were taken away it was due to her noncompliance with her medications.
 {¶ 17} Lee also discussed the case plan in great detail. Furthermore, Lee testified that Lee Ann has complied with the case plan since being released from the hospital in February of 2002. However, he stated that the reason for filing for permanent custody in this case is Lee Ann's past noncompliance with her medications and because of the length of time that Justin had been out of Lee Ann's custody. According to Lee, because of the length of time that Justin had been in the Dominys' custody, Justin has bonded with his brothers and foster parents. Lee testified that MCCS is concerned with placing Justin in a permanent home and that the Dominys have expressed an interest in adopting him.
 {¶ 18} Lee did acknowledge that Lee Ann has complied with everything in the case plan and that she has made a lot of progress since February of 2002. However, he went on to opine that permanent custody was in Justin's best interest, balancing Lee Ann's illness and the possibility of her being able to adequately parent against that of Justin's current situation and his need to be permanently placed in a loving home.
 {¶ 19} Abigail Lama-Gaffney, an outpatient counselor at Marion Area Counseling Center, testified that she had worked with Lee Ann on her issues of past trauma and her own abuse as a child. Gaffney stated that she stopped working with Lee Ann in July of 2003, because of her progress. She stated that Lee Ann had discussed with her that she understood and knew that she needed to stay on her medications, so that she could get Justin back.
 {¶ 20} Dr. Sansait, Lee Ann's former psychiatrist, testified that when he worked with Lee Ann from January until June of 2003, she was compliant with her medications. He also opined, when asked, that a parent who is compliant with their medications would have a better success rate for parenting.
 {¶ 21} Dr. Chittiprolu, Lee Ann's current psychiatrist, testified on Lee Ann's behalf. Chittiprolu stated that he has been working with Lee Ann since July of 2003. He also testified that Lee Ann would have to be medicated for the rest of her life and stated which medications that Lee Ann is currently prescribed. Additionally, he testified that he has changed some of her medications due to the side effects the medications were having on Lee Ann. He also stated that Lee Ann was doing very well on her current medications and her symptoms seem to be stable. Chittiprolu testified that on her medications Lee Ann should be able to function; however, he was hesitant to testify as to whether she would be able to adequately parent. Nevertheless, he did opine that she would have a better chance of adequately parenting if she were to stay on her medications.
 {¶ 22} Maria Lisa Hypes, Lee Ann's adult guardian, testified that she worked with Lee Ann from February of 2002 through October of 2003. Hypes stated that her guardianship with Lee Ann was fairly atypical, because she did very little for Lee Ann. She stated that Lee Ann was very goal oriented and took responsibility for herself. Hypes also testified that she witnessed Lee Ann's interaction with Justin at Justin's birthday party and that Lee Ann was good with Justin. Finally, she stated that she terminated the guardianship in October of 2003, because she felt that Lee Ann no longer needed her assistance.
 {¶ 23} Sandra Buckley, an LPN who acted as Lee Ann's case manager, testified that she worked with Lee Ann from January of 2002 until August of 2003. During that period, Buckley stated that Lee Ann was compliant with her medication. She stated that while she did not witness Lee Ann actually taking her medications, upon review of Lee Ann's case she had no reason to believe that Lee Ann was not compliant with her medications. Additionally, she stated that Lee Ann always informed her when she had not taken one of her medications for any reason. Buckley testified that she was confident that Lee Ann had been truthful with her. Finally, she testified that she stopped working with Lee Ann in August of 2003, because Lee Ann had gained enough independence to take over her own medication regiment.
 {¶ 24} Annelle Elliott, an employment specialist with the Marion Area Counseling Peer Program, testified that she helped Lee Ann to find a job and get back into school. According to Elliott, she mainly put Lee Ann in contact with the people at the school and Lee Ann had taken over from there. She stated that Lee Ann had been very good about taking care of all of her school business on her own. Finally, she stated that Lee Ann had expressed to her that she wanted to obtain a business degree so that she could work towards regaining custody of Justin.
 {¶ 25} Finally, Lee Ann testified. Lee Ann testified that she had been living in an apartment on her own for about a year and three months. She also testified that she was currently receiving disability pay and working part-time, taking care of an elderly woman and cleaning at a near-by funeral home. Additionally, she stated that she was taking approximately twelve credit hours of classes towards a degree in business administration. Lee Ann went on to state that she is working to make a better life for her and Justin and that she knew she would have to make some changes in her life for Justin. While Lee Ann did state that she has a desire to raise Justin, she also stated that presently she would like the court to merely giver her more visitation time. She testified that she was unsure if she was ready to parent Justin full-time and asked that the trial court give her more time and parenting classes.
 {¶ 26} Lee Ann also discussed her other children during her testimony. She stated that she did have a shared parenting agreement with the Dominys for Brock. She also stated that she had voluntarily surrendered her parental rights for both Christopher and Jonathan; however, she testified that she was in the hospital at the time and did not know she was surrendering her parental rights.
 {¶ 27} During her testimony, Lee Ann discussed the history of her illness, her hospitalizations and her medications. She acknowledged being hospitalized in both September and November of 2001, but was unable to remember the incidents leading up to those hospitalizations. She went on to testify that her hospitalizations did have something to do with her failure to be compliant with her medications. She then stated that since her release in February of 2002 she has been in compliance with her medications. She stated that she understood the importance of taking her medications and realizes now that she must take them everyday. She also went on to explain that she had stopped taking some of her medications over the last year and a half due to the side effects.
 {¶ 28} Following the presentation of all evidence, Guardian Ad Litem, Larry Heiser, filed his report and recommendation with the trial court. Heiser based his recommendation upon a review of the entire record; meetings with Lee Ann, the Dominys, Randall Lee, Maria Hypes and Jane Roberts; and, finally, Heiser's involvement in both supervised and unsupervised visits between Lee Ann and Justin at both MCCS and Lee Ann's home. In his recommendation, Heiser acknowledged Lee Ann's compliance with her medications as well as the strides she made the year and a half following her release from Twin Valley. However, it was Heiser's opinion that permanent custody being granted to MCCS was in Justin's best interest. He gave great weight to the Dominys' home and the family environment they were able to offer Justin. He opined that Justin was settled into and acclimated to the Dominys' home, where he had been for most of his young life and where his brothers were located. Additionally, Heiser noted that Lee Ann was not now seeking an immediate return of Justin and that she did not indicate that she could handle full custody of Justin in the near future. Essentially, Heiser's recommendation rested upon his concern with Lee Ann's ability to effectively parent given her prognosis and Justin's need to have permanency in his life. Accordingly, Heiser opined that Justin should remain in the safe environment, which he knows as home.
 {¶ 29} Subsequently, in July of 2004, the trial court granted MCCS's motion for permanent custody. It is from this judgment Lee Ann appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I The trial court erred in finding clear and Convincing evidencethat an award of Permanet custody to marion county childrenServices was in the best interest of Justin Smith
 Assignment of Error No. II Defendant-Appellant received ineffective assistance ofcounsel.
 Assignment of Error No. III The marion county children services board did not makereasonable efforts to return Justin Smith to his home.
 {¶ 30} Due to the nature of appellant's claims, we will be addressing the assignments of error out of order.
 {¶ 31} Assignment of Error No. I {¶ 32} In the first assignment of error, Lee Ann asserts that the trial court erred in finding that there was clear and convincing evidence that awarding permanent custody to MCCS was in Justin's best interest. Specifically, appellant points to several inconsistencies in the trial court's judgment entry. Additionally, Lee Ann asserts that the there was no clear and convincing evidence presented that Justin could not or should not be placed with Lee Ann within a reasonable time as required by R.C. 2151.414(E).
 {¶ 33} We begin our review of this issue by noting that "[i]t is well recognized that the right to raise a child is an `essential' and `basic civil right.'" In re Hayes (1997),79 Ohio St.3d 46, 48, citing In re Murray (1990),52 Ohio St.3d 155, 157. Thus, "a parent's right to the custody of his or her child has been deemed `paramount'" when the parent is a suitable person. Id. (citations omitted). Because a parent has a fundamental liberty interest in the custody of his or her child, this important legal right is "protected by law and, thus, comes within the purview of a `substantial right[.]'" Id. Based upon these principles, the Ohio Supreme Court has determined that a parent "must be afforded every procedural and substantive protection the law allows." Id. (citations omitted). Thus, it is within these constructs that we now examine the assignment of error.
 {¶ 34} Once a child has been placed in the temporary custody of a children's services agency, the agency is required to prepare and maintain a case plan for that child. R.C.2151.412(A)(2). Further, R.C. 2151.412(E)(1) states that "[a]ll parties, including the parents * * * are bound by the terms of the journalized case plan." One of the enumerated goals of a case plan for a child in the temporary custody of a children's services agency is "[t]o eliminate with all due speed the need for the out-of-home placement so that the child can safely return home." R.C. 2151.412(F)(1)(b). This goal is commonly referred to as reunification.
 {¶ 35} However, once an agency files a motion for permanent custody, the Revised Code requires that the trial court determine, by clear and convincing evidence, that a grant of permanent custody to the agency that has so moved is in the best interest of the child and that one of four enumerated factors applies. R.C. 2151.414(B)(1). Included in this list is that:
The child has been in the temporary custody of one or morepublic children service agencies or private child placingagencies for twelve or more of a consecutive twenty-two monthperiod * * *. R.C. 2151.414(B)(1)(d).
 {¶ 36} The Supreme Court of Ohio has held that "[c]lear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear andunequivocal." Cross v. Ledford (1954), 161 Ohio St. 469, 477, citing Merrick v. Ditzler (1915), 91 Ohio St. 256. In addition, when "the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Cross,161 Ohio St. at 477 (citations omitted). Thus, we are required to determine whether the evidence was sufficient for the trial court to make its findings by a clear and convincing degree of proof.
 {¶ 37} In the case sub judice, the court made the following conclusions of law:
1. That the mother has lost permanent custody of two otherchildren Christopher and Jonathan Spencer and has had anotherchild placed in the legal custody of a relative. Christopher andJonathan have been adopted and the child Brock Spencer has beenin placement for several years in the same place.
 2. Mother has failed to comply with the case plan in that sheis unable to maintain her own safe and stable housing and she hasminimally been able to maintain her own mental health status andmanager her own needs.
 3. The court is required by Ohio Revised Code 2141.414(d)(sic.) to consider the effect of a permanent custody hearing uponthe relationship that the child has formed over the years withhis caregivers. This child Justin Smith has lived in the home forquite some time with a prospective adoptive parent Mr. and Mrs.David and Eva Dominick (sic.). At that home are Justin'sbiological half siblings Christopher and Jonathan with whom hehas formed a lasting bond and attachment. Also in the home is hishalf sibling Brock Spencer with whom he has formed an especiallyclose bond since his age and Brock's age are closer.
 4. Justin Smith has formed an attachment to Mr. and Mrs.Dominy of the different placements of the years and the placementwith his brothers. He refers to them as mother and father. Thecourt is not cognizant of the current of Mrs. Spencer. She waspreviously adjudged an incompetent person and placed under aguardianship in Marion County Probate Court. This guardianshipwas finally released about the same time that this matter came onfor permanent care and custody. The mother has made some progressbut the court is obligated to look at the past history of mom'sbehavior in order to make a decision about the best interest ofJustin Smith and his need for permanency and his need for alasting relationship in a homelike environment. The currentplacement of Justin provides all those things and it is thecourt's belief after hearing the testimony of all the partiesthat the mother will still be allowed some contact because of hervisitation with the other boys. This contact could be beneficialfor both the mother and for Justin and placement with MarionCounty Children Services Board and eventual adoption by theDominy's (sic.) is in his best interest.
 {¶ 38} In the first assignment of error, Lee Ann asserts that the trial court's award of permanent custody to MCCS was not supported by clear and convincing evidence that it was in Justin's best interest. Specifically, appellant points to several inconsistencies in the trial court's judgment entry. Additionally, Lee Ann asserts that the there was no clear and convincing evidence presented that Justin could not or should not be placed with Lee Ann within a reasonable time as required by R.C. 2151.414(E).
 {¶ 39} In making a determination of the best interests of the child at a permanent custody hearing, "the court shall consider all relevant factors, including, but not limited to, * * *: (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers * * *, and any other person who may significantly affect the child; (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem * * *; (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty two month period * * *; (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D).
 {¶ 40} On appeal, Lee Ann points to several areas in the trial court's judgment entry where the trial court's findings are inconsistent with the record. Specifically, Lee Ann contends that the trial court's findings that Lee Ann has not complied with the case plan, that she has only been able to maintain some of her visitations and that she is not currently stable and has had a lot of different housing situations are all inconsistent with the record. Additionally, she asserts that the trial court relied upon testimony that is not found in the transcripts. Upon review of the record and the trial court's written judgment entry, we agree that the trial court's judgment entry does include several inconsistencies when viewed in light of the record before us. However, in its entry the trial court clearly considered several relevant factors that are consistent with the record. Additionally, those factors clearly and convincingly support a finding that permanent custody is in Justin's best interest.
 {¶ 41} In its judgment entry, the court clearly considered the interaction and interrelationship of Justin with Lee Ann as well as the Dominys. Because of Justin's age, neither the guardian ad litem nor the trial court judge were able to determine his wishes. The trial court also discussed in depth the custodial history of Lee Ann's other children. The trial court heavily considered the children's need for a legally secure permanent placement. And, finally, the trial court discussed at length Lee Ann's history of being noncompliant with her medications, her hospitalizations as well as the likelihood that she would remain compliant with her medications.
 {¶ 42} Upon review of the entire record, we find that those findings by the trial court are supported by clear and convincing evidence. Additionally, we find that those findings were considered under R.C. 2151.414(D). While we do not condone the trial court's inconsistencies and misrepresentations, we find its decision to award permanent custody to MCCS was nevertheless proper. Regardless of the trial court's judgment, the testimony showed by clear and convincing evidence that it was in the best interests of Justin to grant MCCS permanent custody.
 {¶ 43} Lee Ann goes on to assert that, at the permanent custody hearing, there was no clear and convincing evidence presented that Justin could not or should not be placed with Lee Ann within a reasonable time as required by R.C. 2151.414(E). Here, Lee Ann relies upon the assumption that the trial court was required to make a determination as to whether the child could have been placed with the parent within a reasonable amount of time or should not be placed with the parent, under R.C.2151.414(E). R.C. 2151.414(E) requires a court to consider sixteen enumerated factors to make such a determination.
 {¶ 44} In order to grant MCCS permanent custody under R.C.2151.414(B)(1), the court only needed to make two determinations: (1) that granting MCCS permanent custody would be in the best interests of the children, and (2) that one of four enumerated factors applies. The enumerated factors include:
(a) The child is not abandoned or orphaned or has not been inthe temporary custody of one or more public children servicesagencies or private child placing agencies for twelve or moremonths of a consecutive twenty-two month period ending on orafter March 18, 1999, and the child cannot be placed with eitherof the child's parents within a reasonable time or should not beplaced with the child's parents.
 (b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of thechild who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or morepublic children services agencies or private child placingagencies for twelve or more months of a consecutive twenty-twomonth period ending on or after March 18, 1999.
 {¶ 45} Thus, pursuant to the enumerated factors listed in R.C. 2151.414(B)(1), a R.C. 2151.414(E) determination, as to whether a child cannot be placed with either parent within a reasonable amount of time or should not be placed with the parent, is only required under subpart (a) of that section of the Revised Code. Under subparts (b) through (d), the Revised Code only requires the court to make a best interest determination. It is unnecessary for the court to make any further findings. SeeIn re Morgan, 3d Dist. Nos. 9-04-02, 9-04-03, 2004-Ohio-4018;In re Joiner, 11th Dist. No. 2003-A-0110, 2004-Ohio-1158, at ¶ 41.
 {¶ 46} Here, Justin was found to be a dependant and placed into foster care in August of 2001. He remained in the temporary custody of MCCS from that time until the permanent custody hearing in November of 2003. Accordingly, Justin had been in the MCCS's temporary custody for well over twelve consecutive months prior to the permanent custody hearing, which falls under subpart (d) of R.C. 2151.414(B)(1). That finding is clearly supported by the record. Accordingly, the trial court's review of MCCS's motion for permanent custody did not require the additional findings pursuant to R.C. 2151.414(E).
 {¶ 47} Because the trial court was only required to make a best interest determination and because that determination has been upheld, we cannot find that the court erred. Thus, the first assignment of error is overruled.
 Assignment of Error No. III {¶ 48} In the third assignment of error, Lee Ann asserts that MCCS failed to make reasonable efforts to reunify her and Justin.
 {¶ 49} R.C. 2151.419 imposes a duty on the part of children services agencies to make reasonable efforts to reunite parents with their children where the agency has removed the children from the home. In re Brown (1994), 98 Ohio App.3d 337, 344. The agency bears the burden of showing that it made reasonable efforts. R.C. 2151.419(A)(1). "Case plans are the tools that child protective service agencies use to facilitate the reunification of families who * * * have been temporarily separated." In re Evans (Oct. 30, 2001), 3d Dist. No. 1-01-75, 2001-Ohio-2302. To that end, case plans establish individualized concerns and goals, along with the steps that the parties and the agency can take to achieve reunification. Id. Agencies have an affirmative duty to diligently pursue efforts to achieve the goals in the case plan. Id. Nevertheless, the issue is not whether there was anything more that MCCS could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances.
 {¶ 50} In the case sub judice, MCCS established and filed a case plan. As noted above, the case plan listed the family strengths and family concerns. Specifically, MCCS listed Lee Ann's history of noncompliance with her medications, the fact that Justin was too young to protect himself, Lee Ann's history of victimization of her other children as well as her loss of custody in the past, Lee Ann's history of being abused and neglected as a child and, finally, Lee Ann's criminal history.
 {¶ 51} To comply with the case plan Lee Ann was required to be compliant in the treatment of her illness, by following all doctors' orders, by taking all medications and by cooperating with all counselors as well as her case manager. Additionally, Lee Ann was required to not abuse Justin. To comply, Lee Ann was to attend supervised visitations at MCCS, at which time she was to meet all of Justin's needs. Lee Ann was also required to learn to understand and deal with the effects of her own childhood abuse and neglect, by enrolling in individual counseling and following the recommendations of her therapist. Finally, Lee Ann was required to not engage in or be around people engaging in illegal activities.
 {¶ 52} Clearly, the case plan filed by MCCS addressed the individualized concerns of Lee Ann's case. It specifically addressed her illness and her history in dealing with that illness. The case plan also addressed Lee Ann's parenting history as well as her own history of being abused. Additionally, the case plan set forth reasonable requirements for compliance, under the circumstances of this case, addressing Justin's young age and the severity of Lee Ann's illness. Therefore, we find that MCCS's planning and efforts in this case were reasonable and diligent under the circumstances.
 {¶ 53} Lee Ann, however, argues that because she substantially complied with the requirements of the case plan, MCCS clearly failed to make reasonable efforts toward reunification. We disagree. A parent's compliance is not determinative as to whether an agency has made reasonable efforts toward reunification. While Lee Ann may have substantially complied with MCCS's case plan, that does not take away from efforts put forth by the agency. As noted above, the issue is not whether there was anything more that MCCS could have done, but, rather, whether the agency's case planning and efforts were reasonable and diligent under the circumstances. Having found that MCCS's efforts were reasonable and diligent, we are satisfied that MCCS acted properly in this case.
 {¶ 54} Having found that MCCS satisfied its requirement to make reasonable efforts toward reunification, the third assignment of error is overruled.
 Assignment of Error No. II {¶ 55} In the second assignment of error, Lee Ann asserts that her trial counsel was ineffective, because he failed to effectively cross examine Guardian Ad Litem, Heiser.
 {¶ 56} An ineffective-assistance-of-counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. State v. Bradley (1989),42 Ohio St.3d 136, para. two of syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. Id. at para. three of syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. State v. Bradley (1989), 42 Ohio St.3d 136,142, citing Strickland v. Washington (1984), 466 U.S. 668, 694,104 S. Ct. 2052.
 {¶ 57} Here, Lee Ann asserts that her trial counsel failed to adequately follow up in his cross-examination of Guardian ad Litem, Heiser. Specifically, she asserts that he failed to question Heiser as to his reasoning for his recommendation. An appellate court reviewing an ineffective assistance of counsel claim will not second-guess counsel's strategy in direct and cross-examination of witnesses. State v. Manley, 3d Dist. No. 1-01-159, 2002-Ohio-5582, ¶ 22. Furthermore, debatable tactical decisions generally do not constitute a deprivation of effective counsel. Id.
 {¶ 58} Upon review of the record, we find that Lee Ann's trial counsel acted within the wide range of acceptable professional assistance. Moreover, Lee Ann has failed to show that any of the alleged errors are sufficient to undermine confidence in the trial court's decision. Thus, Lee Ann's second assignment of error is overruled.
 {¶ 59} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 Cupp and Bryant, J.J., concur.