[Cite as *In re D.D.*, 2023-Ohio-4147.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the matter of: | : | |
| | | No. 22AP-786 |
| [D.D. et al., | : | (C.P.C. No. 20JU-289) |
| R.D., Father, | : | (REGULAR CALENDAR) |
| Appellant]. | : | |
| | : | |

D E C I S I O N

Rendered on November 16, 2023

**On brief:** *David K. Greer*, for appellant Father.

**On brief:** *Robert J. McClaren*, for Franklin County Children Services.

**On brief:** *Yeura R. Venters*, Public Defender, and *Timothy E. Pierce*, for appellee Mother.

APPEAL from the Franklin County Court of Common Pleas
Division of Domestic Relations, Juvenile Branch

JAMISON, J.

{¶ 1} Father-appellant, R.D., appeals a decision of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting Franklin County Children Services' ("FCCS" or "agency") motion and committing R.D.'s minor children to the permanent custody of FCCS. For the following reasons we reverse and remand for further consideration.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2} R.D. is the father of D.D., age 14; M.D., age 10; S.D., age 7; and H.D., age 4. Mother, J.B., did not contest the granting of permanent custody and is not a party to this appeal.

{¶ 3} FCCS got involved with the family in July 2019 after H.D. was born with oxycodone in her system. The agency worked with the family on a voluntary basis until additional allegations surfaced. On October 15, 2019, a complaint was filed under case No. 19JU-12020 alleging the children were abused, neglected, and dependent, and the agency received emergency custody of the children. That case was dismissed due to statutory deadlines on January 13, 2020, and FCCS refiled the complaint in January 2020. The refiled case No. is 20JU-289 and is the subject of this appeal.

{¶ 4} On January 15, 2020, Court Appointed Special Advocate ("CASA") was appointed as Guardian ad Litem ("GAL") for the minor children. On March 19, 2020, the children were adjudicated abused and dependent children, and committed to the temporary custody of FCCS. The children have been in foster care since their removal.

{¶ 5} On March 23, 2020, a case plan was filed and made an order of the court. The case plan provided father with multiple objectives including: (1) random drug screens, (2) complete a domestic violence assessment, (3) maintain a stable income and housing, and (4) participate in visitation with the children. The case plan was approved and adopted by the court.

{¶ 6} Temporary custody to the agency was extended six months after a review hearing on October 14, 2020. A second extension of temporary custody was granted on April 14, 2021. In judgment entries filed after each review hearing, the trial court found FCCS made reasonable efforts to work with the family, to prevent the removal of the children, to remedy the conditions that led to the removal, and to establish permanency for the children. Specifically, the reasonable efforts were foster placement, referrals for the parents, and case plan efforts for over two years.

{¶ 7} FCCS filed a motion for permanent custody on July 28, 2021. The GAL filed its initial report recommending the trial court grant permanent custody to the agency for purposes of adoption on February 14, 2022.

{¶ 8} A trial was held on November 2, 2022, and on December 27, 2022 the court granted the motion and committed the children to the agency's permanent custody.

{¶ 9} Father now brings this appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 10} Appellant assigns the following as trial court errors:

[1.] The trial court erred in finding that the agency exercised reasonable efforts in case planning and diligent efforts when it misconstrued the court order and denied the father all contact with the children for nearly two years before trial. The trial court added to the confusion by failing to clarify at the pre-trial that supervised visits and/or family counseling with the children could begin immediately, without a finding that the father's previous visits had been harmful to the children.

[2.] The trial court erred in allowing, over objection, the hearsay testimony of the CASA lay guardian ad litem that the foster parents are "willing and able to adopt the children."

[3.] Terminating the father's parental rights was not the alternative of last resort by clear and convincing evidence when the father completed the case plan to the extent of his ability, without the necessary reasonable and diligent efforts from the agency in case planning services.

## III. STANDARD OF REVIEW

{¶ 11} A trial court may grant permanent custody to an agency such as FCCS if it determines at a hearing, by clear and convincing evidence, that: (1) any of the circumstances in R.C. 2151.414(B)(1)(a) through (d) exist, and (2) the termination of parental rights is in the best interest of the child. R.C. 2151.414(B)(1); *In re E.C.*, 10th Dist. No. 18AP-878, 2019-Ohio-3791. Clear and convincing evidence is that "measure or degree of proof" that "produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus; *In re M.S.*, 8th Dist. No. 101693, 2015-Ohio-1028, ¶ 8. "It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." (Emphasis omitted.) *Cross* at 477. "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.*

{¶ 12} This court has held that the trial court's discretion in determining whether a child should be permanently committed to FCCS "should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on

the lives of the parties concerned." (Quotations and citations omitted.) *In re Bil.I.*, 10th Dist. No. 22AP-127, 2023-Ohio-434, ¶ 24. We will not reverse a trial court's determination in a permanent custody case unless the decision is against the manifest weight of the evidence. *In re Andy-Jones*, 10th Dist. No. 03AP-1167, 2004-Ohio-3312.

{¶ 13} "[I]n reviewing a judgment under the manifest weight standard, a court of appeals weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re L.B.*, 10th Dist. No. 19AP-644, 2020-Ohio-3045, ¶ 27. We " 'must make every reasonable presumption in favor of the judgment and the trial court's findings of facts.' " *In re J.T.*, 10th Dist. No. 11AP-1056, 2012-Ohio-2818, ¶ 8, quoting *In re P.G.*, 10th Dist. No. 11AP-574, 2012-Ohio-469, ¶ 37.

## IV. LEGAL ANALYSIS

{¶ 14} The right to raise your child is "an essential and basic civil right." (Quotations and citations omitted.) *In re Hayes*, 79 Ohio St.3d 46, 48 (1997). This, however, is not an absolute right and is "always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed." (Quotations and citation omitted.) *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979).

{¶ 15} Termination of parental rights is an option of last resort, and the state may terminate parental rights when it is in the best interest of the children. *In re N.M.*, 10th Dist. No. 20AP-158, 2021-Ohio-2080. If parental rights are terminated, the goal is to create " 'a more stable life for the dependent children.' " *In re I.R.*, 8th Dist. No. 110410, 2021-Ohio-3103, ¶ 55, quoting *In re N.B.*, 8th Dist. No. 101390, 2015-Ohio-314, ¶ 67.

{¶ 16} R.C. 2151.414 governs the termination of parental rights. The trial court found clear and convincing evidence established at least one of the circumstances described in R.C. 2151.414(B)(1). R.C. 2151.414(B)(1)(d) describes the situation where the child "has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period." Father does not dispute the trial court's conclusion that the children were in the temporary custody of FCCS for more than 12 months out of a consecutive 22-month period.

{¶ 17} Once the trial court determines that one of the circumstances in R.C. 2151.414(B)(1)(a) through (d) applies, the court must then determine whether a grant of permanent custody is in the best interest of the child. R.C. 2151.414(D)(1) provides that, in determining the best interest of the child, the court must consider all relevant factors, including but not limited to, the following: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, and out-of-home providers, and any other person who may significantly affect the child, (b) the wishes of the child, as expressed directly by the child or through the child's GAL, with due regard for the maturity of the child, (c) the custodial history of the child, including whether the child has been in the temporary custody of 1 or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period, (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency, and (e) whether any of the factors in divisions (E)(7) to (11) of R.C. 2151.414 apply in relation to the parents and child.

{¶ 18} Father's first assignment of error relates to the reasonable efforts requirement contained in R.C. 2151.414(E)(1) and 2151.419(A)(1), which provides that the trial court must determine whether a public children services agency has made reasonable and diligent efforts to prevent the removal of a child from the child's home, address any concerns, and to provide a safe return back to the home. Father's third assignment of error contends that he completed the case plan to the best of his ability, but because FCCS did not afford him reasonable and diligent case planning efforts, an award of permanent custody to the agency is not appropriate. Because both assignments of error concern the use of reasonable efforts in the case plan, we address them together.

{¶ 19} Father contends FCCS cannot be found to have made reasonable efforts at reunification when it failed to make appropriate referrals so the case plan requirements could be fulfilled. Specifically, father alleges that FCCS did not expend reasonable efforts to refer him to family counseling.

{¶ 20} The agency has the duty to make reasonable efforts to preserve or reunify a family unit, including preparing and maintaining a case plan to bring the children back home. R.C. 2151.412. In a permanent child custody matter, the agency has the burden to

prove it made reasonable efforts to reunify. *In re Warren*, 5th Dist. No. 2007CA00054, 2007-Ohio-5703.

**{¶ 21}** R.C. 2151.419(A)(1) requires the trial court to determine if the agency made reasonable efforts to return a child home and applies at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 41. Because R.C. 2151.419(A)(1) does not refer to permanent custody hearings, it "does not apply in a hearing on a motion for permanent custody filed pursuant to R.C. 2151.413" if the agency has established that reasonable efforts have been made. *Id.* at ¶ 43. However, an agency "must still make reasonable efforts to reunify the family during the child-custody proceedings prior to the termination of parental rights." *Id.*

**{¶ 22}** The court adopted magistrate's decisions finding that the children were abused and dependent minors following a hearing on FCCS's motion for extension of temporary custody. In those decisions, the magistrate found that reasonable efforts had been made to prevent or eliminate the need for removal of the children from their home. Father did not file objections to those earlier magistrate's decisions or appeal the juvenile court decisions adopting them. *See In re J.H.*, 10th Dist. No. 19AP-517, 2021-Ohio-807, ¶ 65 (noting that the mother did not object to or appeal from judgments adjudicating children as dependent and granting temporary custody to FCCS and finding that reasonable efforts to prevent removal had been made).

**{¶ 23}** However, because the trial court relied upon R.C. 2151.414(E)(1) in making a determination of whether permanent custody was proper, "the court must examine the reasonable case planning and diligent efforts by the agency to assist the parents when considering whether the child cannot and should not be placed with the parent within a reasonable time." *In re M.K.*, 5th Dist. No. 22CA000030, 2023-Ohio-96, ¶ 49. The issue is not whether the agency could have done anything more, "but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case." *Id.* In determining whether reasonable efforts were made, "the child's health and safety shall be paramount." R.C. 2151.419(A)(1); *In re K.M.*, 12th Dist. No. CA2004-02-052, 2004-Ohio-4152, ¶ 23.

{¶ 24} " 'Reasonable efforts means that a children's services agency must act diligently and provide services appropriate to the family's need to prevent the child's removal or as a predicate to reunification.' " *In re H.M.K.*, 3d Dist. No. 16-12-15, 2013-Ohio-4317, ¶ 95, quoting *In re D.A.*, 6th Dist. No. L-11-1197, 2012-Ohio-1104, ¶ 30.

{¶ 25} Reasonable efforts do not equate to all available efforts. *In re B.F.*, 3d Dist. No. 11-21-04, 2021-Ohio-4251. " 'Otherwise, there would always be an argument that one more additional service, no matter how remote, may have made reunification possible.' " (Quotations and citation omitted.) *Id.* at ¶ 11, quoting *In re M.A.P.*, 12th Dist. No. CA2012-08-164, 2013-Ohio-655, ¶ 47. "[T]he meaning of 'reasonable efforts' 'will obviously vary with the circumstances of each individual case.' " *In re C.B.C.*, 4th Dist. No. 15CA18, 2016-Ohio-916, ¶ 76, quoting *Suter v. Artist M.*, 503 U.S. 347, 360 (1992).

{¶ 26} A case plan is a tool that FCCS uses to facilitate the reunification of families following a temporary separation, and the agency has "an affirmative duty to diligently pursue efforts to achieve the goals in the case plan." *In re Smith*, 3d Dist. No. 9-04-35, 2005-Ohio-149, ¶ 49.

{¶ 27} The agency must establish "reasonable case planning" and then use "diligent efforts" to "assist the parents to remedy the problems." R.C. 2151.414(E)(1). FCCS's activities toward reunification with father must be "characterized by steady, earnest, and energetic application and effort." *In re Jeroncic*, 8th Dist. No. 58619 (June 27, 1991). An agency's role is not over once a child is removed. It "has the responsibility to actively aid the parent so that the children could be returned to the parent." (Emphasis omitted.) *Id.*

{¶ 28} The trial court specifically found that FCCS made reasonable efforts to prevent or eliminate the need for removal of said children from the children's own home, and that reasonable efforts have also been made to finalize the permanency plan in effect for the children. The trial court noted "[f]ather failed to adequately address his substance abuse and domestic violence issues" and "failed to effectively or consistently work toward completion of the Case Plan requirements." (Dec. 27, 2022 Decision & Jgmt. Entry at 9.) Further, the trial court found the FCCS caseworker made reasonable efforts to assist mother and father in linking them for services necessary to complete their case plans. Based on our review of the record, this determination was against the manifest weight of the evidence.

{¶ 29} The record should contain evidence supporting an agency's reasonable efforts. *See In re M.W.*, 10th Dist. No. 19AP-769, 2020-Ohio-5199 (the mother stated she never started family counseling because she was waiting for a call from a counselor was rebuffed when the clinician testified that she attempted to contact the mother for several months but mother's phone service was disconnected and she provided no alternate means of communication); *In re R.G.S.*, 10th Dist. No. 20AP-101, 2020-Ohio-6696 (the mother testified her caseworker reviewed the case plan with her, provided referrals for case plan activities, provided assistance for securing housing, and was willing to provide bus passes, funds for gas, or fares for taxi rides as needed and the caseworker testified she linked the parents with all the services required to complete their case plans); *In re N.C.*, 2d Dist. No. 28105, 2019-Ohio-567 (a caseworker testified she had made referrals to the father for parenting classes, but father refused).

{¶ 30} Father testified he has made progress on his case plan and completed drug screens, domestic violence counseling, family counseling, and parenting classes. Further, father was aware he was expected to have a stable income and stable housing.

{¶ 31} Father understood he could visit with the children after he engaged in family counseling. However, father stated he never started the counseling because his caseworker failed to make a referral for the services or otherwise get him involved with counseling.

{¶ 32} Father testified he has had several caseworkers during this matter, and that none were receptive to making referrals on his behalf. Specifically, he was never provided a referral for family counseling, and therefore, was precluded from visiting with his children. He testified he called and left 16 voicemail messages for the current caseworker; the caseworker testified there were only 2 recent messages, and she responded to them.

{¶ 33} The caseworker testified regarding the efforts of FCCS to implement the case plan. There was no testimony regarding any referral made for family counseling.

{¶ 34} The record is incomplete regarding the communication between the caseworkers and father regarding his attendance at family counseling. Whenever a caseworker leaves an active case and is replaced by a new worker—and, in this case, over and over and over again—the consequences are costly for parents and their children.

{¶ 35} The agency states mother is working her case plan and has shown she is willing to do whatever is necessary to get her children back. Even though the case plan cites that father is active in the case, his progress is not noted.

{¶ 36} Only the current caseworker was a witness at the permanent child custody hearing. The caseworker was not able to discuss father's engagement with the case plan and could offer no evidence of services provided or referrals made. There was no testimony regarding any referrals made to father for family counseling.

{¶ 37} Father was ordered to complete a domestic violence assessment, and the agency apparently made a referral for those services. Father testified he followed through and took the assessment, and he has a receipt for the course. Father also stated he took other courses.

{¶ 38} FCCS referred father to American Court Services for drug screens. FCCS also referred father to Syntero for counseling. Father was referred to Africentric for domestic violence counseling, and there was some difficulty in setting up the initial meeting.

{¶ 39} However, the caseworker testified that she has searched for records but has found none. When asked about reviewing the programs father has completed, she testified "I have and unfortunately, I have not seen any records of completion." (Nov. 2, 2022 Tr. at 114.) The caseworker stated she wanted father to sign releases so she could obtain information, which would indicate there were no releases in the file.

{¶ 40} Our review of the record reveals that seven case plans have been filed in this matter, which is consistent with amending the case plan as services are provided and progress made. However, the case plan filed on March 5, 2020 is the only case plan filed under case No. 20JU-289, the case under appeal. The last four case plans have been filed under the old case No. 19JU-12020, which was dismissed on January 13, 2020. The most recent case plan, version 2.07, was filed on January 7, 2022, under the old case number.

{¶ 41} The issue here is even though the trial court found there were reasonable efforts, the record is completely devoid of any evidence of what reasonable efforts were undertaken. Regarding family counseling, the caseworker did not discuss the circumstances behind the referral, and never confirmed a referral was made. She did not discuss her efforts to link father with family counseling.

{¶ 42} Even though there were multiple caseworkers involved, there should be reports and notes in the case file that should allow a review of past activities. There is no evidence that any caseworker met with father and discussed the plan with him. While the revolving caseworkers may have created a lack of continuity, the reunification goal remained consistent.

{¶ 43} The record is simply lacking evidence that FCCS made a diligent effort to reunify father and his children. There was not a single specific instance of a referral made by FCCS. At the pre-trial, the agency recognized father's contentions that he had made progress on the case plan, but they "have been unable to verify." (Nov. 17, 2021 Tr. at 6.) The lack of any records is troubling.

{¶ 44} Father also asserts he completed the case plan to the best of his ability but was frustrated by the agency's lack of reasonable and diligent case planning efforts, and that there were viable options available other than terminating his parental rights.

{¶ 45} The successful completion of a case plan is not dispositive on whether a father is reunited with his children. *In re Conn*, 10th Dist. No. 03AP-348, 2003-Ohio-5344; *see also In re W.A.J.*, 8th Dist. No. 99813, 2014-Ohio-604. While a parent has a vested interest in completing a case plan, it "is only one factor for a trial court to consider what is in the best interest of the child." *In re O.S.*, 5th Dist. No. 21CA00018, 2021-Ohio-3729, ¶ 90.

{¶ 46} There is no evidence of any efforts by FCCS to facilitate the case plan. While father states that he participated in domestic violence and substance abuse assessments, FCCS offers nothing in rebuttal only to confess they have no records. FCCS did admit at the pre-trial that father had completed parenting classes. Father testified the caseworker never gave him a referral for family counseling. The record should at least indicate the date any referrals were made and the status of any provided services.

{¶ 47} We find the record does not support a determination that the agency did enough to satisfy the reasonableness standard under the statute.

{¶ 48} Accordingly, father's first and third assignments of error are sustained.

{¶ 49} Father asserts as his second assignment of error that the trial court allowed a statement by the GAL that the foster parents were willing and able to adopt the children. Father contends the statement was hearsay and is inadmissible.

**{¶ 50}** The agency challenges the assignment of error by asserting the statement fits within the present sense impression exception outlined in Evid.R. 803(3). When a caseworker in a permanent custody hearing testifies that foster parents want to adopt children in their care, the caseworker is relaying "the foster parents' statement of their present plan or intent," which is admissible under the exception. *In re P.S.*, 10th Dist. No. 08AP-1023, 2009-Ohio-1545, ¶ 16.

**{¶ 51}** In spite of the exception, inadmissible hearsay may be grounds for reversal if the trial court relied on the caseworker's statement in its decision to terminate parental rights. *In re T.V.*, 10th Dist. No. 04AP-1159, 2005-Ohio-4280. Because father cannot point out any reliance on the statement, there is no need for remedial action.

**{¶ 52}** Father's second assignment of error is overruled.

## V. CONCLUSION

**{¶ 53}** Diligent and reasonable efforts to reunify were not made by the agency prior to the granting of permanent custody. We find an abuse of discretion in the determination that reasonable efforts have been shown to eliminate the need for removal of the children through the case plan.

**{¶ 54}** On remand, the trial court should identify the specific actions FCCS undertook regarding its duty to use reasonable efforts to reunify father and the children pursuant to R.C. 2151.414(E)(1) and 2151.419(A)(1), and whether there is clear and convincing evidence to support the finding.

**{¶ 55}** Father's first and third assignments of error are sustained, and his second assignment of error is overruled. The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is reversed and the cause remanded to that court for further proceedings consistent with law and this decision.

*Judgment reversed*;
*cause remanded with instructions.*

.

MENTEL and EDELSTEIN, JJ., concur.

_____