OPINION
{¶ 1} Appellant Sarah Dunfee ("Dunfee") brings this appeal from the judgment of the Court of Common Pleas of Seneca County, Juvenile Division, terminating her parental rights. For the reasons set forth below, the judgment is affirmed.
 {¶ 2} On March 10, 2005, Nevaeh Cunningham ("Nevaeh") was born to Dunfee and Jason Cunningham ("Cunningham"). The Seneca County Department *Page 3 
of Job and Family Services ("the Agency") became involved with the family after learning that Dunfee was smoking marijuana in front of Nevaeh and that Dunfee lacked stable housing. Dunfee and the Agency entered into a voluntary plan to help Dunfee provide a safe and stable environment for Nevaeh. The voluntary plan was not effective and on May 23, 2006, the Agency filed a complaint alleging that Nevaeh was a neglected and dependent child. The Agency requested that temporary custody be placed with relatives of Dunfee, Jack and Mildred Aldrich. The Agency also requested protective supervision. At that time, Dunfee was living with the Aldrichs and was caring for Nevaeh with their help.
 {¶ 3} On May 25, 2006, Keyara Cunningham ("Keyara") was born to Dunfee and the alleged father, Barry Adams ("Adams"). The Agency filed a complaint alleging that Keyara was dependent and neglected on June 5, 2006. The Agency again requested that temporary custody be granted to the Aldrichs and that it be granted protective supervision. A special advocate was appointed for both girls on June 7, 2006. On June 26, 2006, the trial court granted the motion for shelter care and ordered that temporary custody of Keyara be granted to the Aldrichs with the Agency having protective supervision. An identical order concerning the temporary custody of Nevaeh was filed on June 27, 2006.
 {¶ 4} On July 3, 2006, Mildred Aldrich contacted the Agency and informed them that she could no longer provide care for Nevaeh and Keyara. *Page 4 
Thus, on July 12, 2006, the Agency filed an emergency motion to modify the prior order and award temporary custody of the girls to the Agency. This motion was granted on July 19, 2006, and the girls were placed in foster care.
 {¶ 5} On October 19, 2006, an adjudication hearing was held. The magistrate's decision was filed on October 26, 2006, finding that the girls were dependent. The neglect claims were dismissed. The Agency continued to have temporary custody with Dunfee be given supervised visits. No objections were filed and the trial court adopted the magistrate's decision on November 2, 2006.
 {¶ 6} On December 30, 2006, an amended case plan was approved. The case plan required Dunfee to do the following: 1) obtain counseling; 2) obtain a drug and alcohol assessment; 3) cease using illegal drugs; 4) submit to random drug tests; 5) obtain counseling concerning domestic violence issues between her and Cunningham; 6) complete a parenting class; 7) visit with the girls; 8) find safe and stable housing; and 9) prepare a budget. A review hearing was held on June 19, 2007. Pursuant to an agreed disposition, temporary custody was continued. However the Agency indicated at the hearing that it intended to file for permanent custody of the girls due to the length of time they had been in the temporary custody of the Agency.
 {¶ 7} On September 19, 2007, Arianna Cunningham ("Arianna") and Alanna Cunningham ("Alanna") were born to Dunfee and Cunningham. A *Page 5 
complaint alleging that Arianna and Alanna were dependent children was filed that same day. The Agency also filed an emergency order for temporary custody of both girls, which the trial court granted. On September 20, 2007, a guardian ad litem was appointed for Arianna and Alanna.
 {¶ 8} On November 5, 2007, the Agency filed for permanent custody of all four girls.[1] The motions filed alleged that Nevaeh and Keyara had been in the temporary custody of the agency for more than twelve of the prior twenty-two consecutive months. These motions also alleged that Dunfee had failed to comply with the case plan by 1) failing to complete drug treatment programs indicated by the drug assessment; 2) testing positive for marijuana use as recently as June 2007; 3) missing multiple visits with the children; 4) failing to complete her parenting classes; and 5) failing to complete counseling.[2] The Agency filed motions seeking permanent custody of Arianna and Alanna on January 10, 2008. These motions alleged that Dunfee failed to comply with the case plan and provided the same reasons as the motions filed for Nevaeh and Keyara.
 {¶ 9} On February 27, 2008, a hearing was held on all of the motions. Due to some procedural issues that arose, the Agency moved to dismiss all four motions for permanent custody without prejudice. This motion was granted at that *Page 6 
time, thought the court did not place the ruling on the record until June 4, 2008. The GAL filed her report on February 27, 2008, as well. The GAL recommended that permanent custody be granted to the Agency.
 {¶ 10} On March 18, 2008, the Agency filed new motions for permanent custody in all four cases. These motions set forth the same basis as the prior ones. The cases were consolidated for the purpose of hearing. The hearing was held on June 16-17, 2008. Dunfee did not appear at the hearing, but was represented by counsel. On July 16, 2008, the trial court entered judgment granting permanent custody to the Agency. Dunfee appeals from this judgment and raises the following assignments of error.
 First Assignment of Error The trial court erred to the prejudice of [Dunfee] in granting permanent custody of the minor children to [the Agency] because the Agency failed to implement and devise a case plan which would be reasonably calculated to achieve the goal of reunification with either parent, taking into consideration the limited cognitive abilities of the parents.
 Second Assignment of Error The trial court erred in granting permanent custody of the minor children to [the Agency] based upon the failure of the Agency to reasonably accommodate [Dunfee's] disability as required by the Americans with Disabilities Act.
 Third Assignment of Error The trial court erred in granting permanent custody of the minor children to [the Agency] based upon the failure of the *Page 7 Agency to file an adoption case plan as mandated by [R.C. 2151.413(E)] at the time the motion for permanent custody was filed.
 Fourth Assignment of Error The trial court erred in granting permanent custody of the minor children to [the Agency] as the determination of the trial court was not supported by clear and convincing evidence.
 {¶ 11} In the third assignment of error, Dunfee claims that the Agency failed comply with R.C. 2151.413(E) by failing to file an adoption case plan at the time the motion for permanent custody was filed. Dunfee argues that this failure denies the trial court jurisdiction to hear the motion. The statute in question states as follows.
 Any agency that files a motion for permanent custody under this section shall include in the case plan of the child who is the subject of the motion, a specific plan of the agency's action to seek an adoptive family for the child and to prepare the child for adoption.
R.C. 2151.413(E). However, the Supreme Court of Ohio has held that although the statute requires a case plan for adoption to be filed, the statute does not require it to be filed before the motion is granted.In re T.R. et al., ___ Ohio St.3d ___, 2008-Ohio-5219, ¶ 12, ___ N.E.2d ___. "R.C. 2151.413(E) requires a children-services agency seeking permanent custody of a child to update the child's case plan to include adoption plans, but it does not require the agency to perform this action before the juvenile court rules on the motion for permanent custody." Id. *Page 8 
at ¶ 17. The record indicates that the Agency filed its case plan setting forth the goal of adoption on July 23, 2008. Thus, the Agency has complied with the requirements of the statute as interpreted by the Ohio Supreme Court. For this reason, the third assignment of error is overruled.
 {¶ 12} The first and second assignments of error both allege that the Agency did not formulate a case plan that accommodated the limited cognitive abilities of Dunfee or complied with the Americans with Disabilities Act. The first assignment of error claims that the trial court erred by granting permanent custody solely based upon the limited cognitive abilities of Dunfee. In support of this argument, Dunfee citesIn re: D.A., 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829.
 In the case of In re D.A., the child was initially removed from his parent's home because the mother had rquested help in handling her son's aggressive behavior. * * * After their son was placed in the agency's temporary custody, the parents were given four objectives in their case plan. * * * The parents completed every aspect of their case plan, except one which was not completed due to the agency's suspension of the class. * * * The trial court found that the parents did "not demonstrate many of the irresponsible, uncaring, or dangerous characteristics that are regularly evident in many permanent custody cases." * * * Further, the trial court found that the child was doing well in school, exhibited appropriate behavior in school, did not show any intellectual limitations, and that his defiant behavior had decreased. * * * However, because of the parent's (sic) low cognitive skills (they demonstrated IQ levels between 62 and 59), their severe limitations "seriously jeopardize[d]" their child's "healthy, successful future." * * * On appeal, the Ohio Supreme Court reversed, stating: *Page 9 
 "Despite making several findings regarding the parents' limited cognitive abilities, the trial court did not find that appellants were unable to provide an adequate home for D.A. due to their mental retardation, a finding that is required to satisfy R.C. 2151.414(E)(2) (footnote omitted). Furthermore, the evidence does not support a finding that appellants failed to provide D.A. with an adequate permanent home. There is no evidence that he lacked adequate clothing, food, shelter, or care. He performed in school and displayed appropriate behavior."
 * * * In conclusion, the Court held that terminating parental rights solely on the parents' mental retardation does not comply with R.C. 2151.414.
In re Robinson, 3d Dist. No. 1-08-24, 2008-Ohio-5311, ¶ 36 (citations omitted).
 {¶ 13} This court has previously distinguished In re D.A. from other cases which include additional evidence that links the limited cognitive abilities to the ability to provide an adequate home. SeeRobinson, supra. In Robinson, the mother had limited cognitive functioning. Testimony was presented that the mother, given her cognitive abilities, would be unable to provide the minimum level of parental competence. Testimony was also presented that the mother did not complete her parenting classes and exhibited an unwillingness to take direction from the agency workers. Based upon this testimony, this court found that the trial court did not abuse its discretion in terminating the parental rights. Thus, although the trial court may not terminate parental rights solely based upon limited cognitive abilities, it is a factor that may be considered. *Page 10 
 {¶ 14} In this case, testimony was presented that Dunfee suffered from limited cognitive abilities. Specifically evidence was presented that Dunfee quit school when she was in the ninth grade. Dunfee told Dr. Daniel Cruikshanks ("Cruikshanks") that she had a learning disability, but did not identify what that disability was. Her intellectual ability was determined to be in the low-average range with no indication of cognitive deficits such as mental retardation. Cruikshanks Report, 4. Specifically, the test results showed that her word reading level had a grade equivalent was approximately the fourth grade, her sentence comprehension level was approximately the eighth grade, and that her math computation score was approximately the fifth grade. Id. at 6. Cruikshanks determined that Dunfee would be "quite challeged with many of the basic skills of living." Id. at 7. However, a second test suggested that Dunfee's abilities were more in line with those of a person with average to above average intelligence, but low education levels. Id. Cruikshanks opinion, as stated in the report, was that although Dunfee has more difficulty learning new tasks than the average person, she is capable of learning. Id. at 10. Cruikshanks concluded that the real issue was with Dunfee's willingness to learn, not her ability to do so. Id.
 {¶ 15} At trial, Cruikshanks testified that Dunfee does not suffer from any specific learning disability. Tr. 22-23. Dunfee does have an IQ that is below average which makes it difficult to learn, but not impossible. Id. at 23. *Page 11 
Cruikshanks also testified that based upon his testing, Dunfee suffers from depression, anxiety, and some obsessive/compulsive tendencies. Id. at 24. He noted that Dunfee admitted to dependence on marijuana. Id. He also testified that Dunfee had a borderline personality disorder which includes symptoms of instability in one's life, failure to take responsibility for one's own problems and to blame others for them. Id. 27-28. In Cruikshanks opinion, this diagnosis is partially responsible for Dunfee's failure to obtain stable housing and stable interpersonal relationships. Cruikshanks noted that he was concerned by Dunfee's lack of distress about not having the children in her life. Id. at 30. Cruikshanks testified that even if Dunfee sought treatment for her condition, the treatment course is usually long term and has a low chance of success.
 {¶ 16} Missy Bennett ("Bennett") was the social worker who testified for the Agency. She testified that Dunfee's sole source of income was her social security disability benefits. Id. at 50. She also testified that although Dunfee and Cunningham admitted that Cunningham had physically struck Dunfee on occasion, they thought it was humorous and that Dunfee had not completed any course in domestic violence. Id. at 51-52. Dunfee had admitted to Bennett that she used marijuana. Id. at 52. Although Dunfee claimed to Bennett that she had completed half of the case plan, further discussion between the two revealed that Dunfee had not completed any of the objectives on the case plan after one year. *Page 12 
Id. at 54. Bennett testified that after the home study, she did not approve the home for placement due to Dunfee's lack of motivation to complete the case plan goals and due to lack of space in the home.[3]
Id. at 55, 63. Bennett concluded that Dunfee could not care for the children financially without a great number of services on an ongoing basis. Id. at 62. Bennett testified that at the time of the home study, Dunfee's mental ability was such that she could not care for the children. Id. at 64.
 {¶ 17} The next witness presented by the Agency was Mary Reinhart ("Reinhart"). Reinhart supervised the visits between Dunfee and the children. At trial, Reinhart testified that 34 visits were scheduled between Dunfee and the children between April 13, 2007, and December 7, 2007. Id. at 74. Dunfee attended 17 of those visits. Id. Twelve of the visits were missed without explanation and five were cancelled by Dunfee. Id. at 77. To Reinhart's knowledge, the last visit attended was November 17, 2007. Id. at 79. However, the foster mother testified that the last visit was in the middle of March, 2008. Id. at 95.
 {¶ 18} Jennifer Kahler ("Kahler") served as the GAL in this case. She testified that she believed that granting permanent custody to the Agency would be in the children's best interests. Id. at 107. Her opinion was based upon *Page 13 
Dunfee's lack of activity toward completing the case plan, the lack of visits, Dunfee's drug usage, failure to complete counseling, and the lack of stability in finding a home. Id. Kahler testified that since the beginning of the case plan in 2006, Dunfee has had over eight addresses, with the last home reviewed for a home study found to be unclean and not suitable for the children. Id. at 108. Although Kahler admitted that she had never met with Dunfee, she stated that the reason was that Dunfee never responded to her requests and frequently cancelled visits with the children. Id. at 115.
 {¶ 19} Loren Perkins ("Perkins") supervised the visits between Dunfee and the children from January 22, 2008 until the date of the hearing. She testified that she scheduled 12 visits for Dunfee and the children. Id. at 119. Dunfee attended only four of those scheduled visits with the last one being held on March 28, 2008. Id. Although the behavior was appropriate while the visits occurred, Dunfee had repeatedly cancelled the visits. Id. at 119-121. Perkins testified that in her opinion, Dunfee was not capable of caring for all four of the children at once. Id. at 122. Finally, Perkins testified that Dunfee called on June 9, 2008, to schedule a visit. Perkins set up the visit for June 11, 2008, and Dunfee told her she would call on June 10, 2008, to confirm that the time would fit in her schedule. Dunfee never called and the visit was cancelled. Id. at 134. *Page 14 
 {¶ 20} The main witness presented by the Agency was Jesusa Behee ("Behee"). Behee served as the social worker assigned to Dunfee's case from January 2006, until the time of the hearing. Id. at 137. Behee testified that the initial court ordered case plan basically required Dunfee to visit with the children, find stable housing, pay their bills, attend parenting classes, and quit using illegal drugs. Id. at 142-43. Behee further testified that Dunfee had scheduled appointments for drug counseling, but did not complete the programs, started parenting classes, but did not complete them, started psychological counseling, but did not complete it, and had had sporadic visits with the children. Id. at 148-49. Dunfee was able to stay in one home for five to seven months, but that was the longest period of time in which she had stable housing. Id. Dunfee also never completed a budget. Id. at 150. Of the ten drug screens Dunfee had scheduled, four were positive for marijuana with one of the four including a positive result for cocaine. Id. at 150-51. Two tests were refused. Id. at 151. Behee testified that it was frequently difficult to locate Dunfee and that there were months that she did not see Dunfee because she was unable to locate Dunfee. Id. at 158. Over the course of the case, Behee has had 14 different addresses for Dunfee. Id. at 159. As of the date of the final hearing, Behee was aware that the only element of the case plan completed in more than two years was the drug and alcohol assessment. Id. at 162. However, Dunfee did not follow the recommendations of *Page 15 
the assessment by completing counseling or a treatment program. Id. Behee testified that there was nothing she could do to help Dunfee comply with the case plan since Dunfee does not complete the assistance offered and does not keep in contact with the Agency and does not keep her address current. Id. at 163. When asked about any disabilities Dunfee may have, Behee testified that she knew of none. Id. at 174. When Dunfee was offered extra visits with Arianna and Alanna, Dunfee declined them instead choosing to just have one a week. Id. at 175.
 {¶ 21} On cross-examination, Behee acknowledged that after Dr. Cruikshanks evaluation, Dunfee was not scheduled for additional psychological evaluation and treatment. Id. at 221. However, Dunfee never requested a psychiatric evaluation. Id. at 249. Behee testified that she attempted to learn what disability qualified Dunfee for social security disability, but was never given an answer by any of the people she questioned, including Dunfee.[4] Id. at 223. She also testified that she specifically went over the requirements of the case plan with Dunfee to insure that she understood them. Id. at 226. Dunfee never indicated to Behee that she did not understand the requirements of the case plan. Id. at 254.
 {¶ 22} The final witness presented was June Huss ("Huss"), who served as the CASA GAL. Huss testified that she had only met Dunfee at visits and court *Page 16 
because she could never locate Dunfee outside of those locations. Id. at 382. Huss had observed Dunfee interact with the children during the visits. Id. at 383. After her investigation, Huss recommended that permanent custody be granted to the Agency. Id. at 389. Huss testified that her opinion was based on the fact that over the two years she had been involved in the case, she had not seen Dunfee make progress on the case plan. Id. at 390.
 {¶ 23} After reviewing the record, the trial court clearly did consider Dunfee's limited cognitive abilities in making its decision. This was one of the factors considered by the trial court. However, it was hardly the only factor. In the cases of Nevaeh and Keyara, the girls had been in the temporary custody of the Agency for more approximately 19 months of the prior 22 months by the time the Agency filed its motion for permanent custody. For this reason alone, the trial court could properly terminate parental rights regardless of Dunfee's mental limitations. The trial court also noted that Dunfee had not complied with the case plan by failing to find stable housing, complete counseling, avoid using illegal drugs, or attending visits regularly. The trial court also noted that mother has been diagnosed with a borderline personality disorder which interferes with her ability to properly care for the children. The trial court can consider the limited cognitive abilities as they relate to the ability to parent children as one of the factors to be considered. See Robinson, supra. The record lacks evidence of how *Page 17 
the case plan did not consider these factors when setting forth the requirements. The first assignment of error is overruled.
 {¶ 24} In the second assignment of error, Dunfee argues that the Agency made no accommodations for her disability. Having reviewed the record, evidence was presented that Dunfee's intelligence is below average. However, no specific disability was identified and no accommodations were ever requested. The only evidence before the trial court is that when the Agency made attempts to discover the nature of Dunfee's disability that was resulting in social security payments, no response was ever provided. The evidence indicates that Dunfee understood what the case plan required and that she attempted to comply with the requirements on several instances. Dunfee would start programs but always quit before completion. This was supported by Dr. Cruikshanks finding that Dunfee's issue was less one of ability but more one of motivation, determination, and willingness to complete the case plan. Contrary to Dunfee's allegation, the Agency did provide services and did make efforts to insure that Dunfee did understand what was required. Dunfee consistently indicated that she understood and asked appropriate questions. Dunfee knew that she was supposed to be obtaining a psychological evaluation and treatment. She scheduled the counseling sessions, but subsequently quit attending. Thus, the record does not support Dunfee's contention that the Agency violated the Americans with Disabilities Act *Page 18 
by not providing accommodations due to Dunfee's "disability." The second assignment of error is overruled.
 {¶ 25} The final assignment of error is that the trial court's judgment is not supported by clear and convincing evidence. "When the `degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof.'" In re Smith, 3d Dist. No. 9-04-35,2005-Ohio-149, ¶ 36 (quoting Cross v. Ledford (1954), 1616 Ohio St. 469, 477, 120 N.E.2d 118). A trial court may grant permanent custody of a child to the agency if it determines, by clear and convincing evidence, that 1) one of the four factors listed in R.C. 2151.414(B)(1)(a-d) applies, and 2) that it is in the best interest of the child as set forth in R.C. 2151.414(D). The factors set forth in R.C. 2151.414(B)(1) relevant to this case are as follows.
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 * * *
 The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a *Page 19 consecutive twenty-two month period ending on or after March 18, 1999.
R.C. 2151.414(B)(1).
 {¶ 26} To determine whether a child cannot be placed with either parent within a reasonable time, the relevant portions of R.C. 2151.414(E) provide as follows.
 (E) * * * If the court determines, by clear and convincing evidence * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent.
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 * * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.] *Page 20 
 * * *
 (16) Any other factor the court considers relevant.
R.C. 2151.414(E). Once the trial court has determined that a factor pursuant to R.C. 2151.414(B) is present, the trial court must then consider whether granting permanent custody to the Agency is in the best interests of the child by reviewing the factors set forth in R.C. 2151.414(D).
 {¶ 27} In this case, the trial court first determined that as for Nevaeh and Keyara, the girls had been in the temporary custody of the Agency for approximately 19 months of the prior 22 months. This satisfies R.C. 2151.414(B)(1)(d). However, this finding did not apply to Arianna and Alanna, who had only been in the temporary custody of the Agency for approximately seven months at the time the motion for permanent custody was filed. The trial court then proceeded to determine if the children could be placed with their parents within a reasonable time, as defined by R.C. 2151.414(E). The trial court made the following findings.
 [The Agency] has used reasonable case planning and diligent efforts to assist [Dunfee] to remedy the problems that caused Nevaeh, Keyara, Arianna, and Alanna to be placed outside their home.
 [Dunfee] has failed continuously and repeatedly to substantially or significantly remedy the conditions causing Nevaeh, Keyara, Arianna, and Alanna to be placed outside their home. *Page 21 
 * * *
 [Dunfee] has not been consistent with her visits with the children.
 * * *
 The lack of consistent visits has inhibited and frustrated reunification with [Dunfee]. Time continues to grow from the last visit between children and [Dunfee] on March 28, 2008.
 * * * [Dunfee] apparently resides in Kentucky. [Dunfee has] elected to not attend court proceedings regarding the motion to terminate [her] parental rights.
 * * * [Dunfee] has not had stable housing over the past two years.
 * * *
 [Dunfee had] apparently planned and agreed to move to Kentucky during the pendency of these proceedings. This move took place in March or April, 2008. No information was provided to the court that this move would facilitate and complete the purposes of the case plan by: providing stable housing; providing employment; providing budgeting stability; providing counseling; providing drug and alcohol assessments; facilitating reunification; facilitating visits; * * * or facilitate [Dunfee's] counseling.
 The court concludes that [Dunfee is] capable of creating and executing plans that affect change — such as moving out of state. But [she elects] to not complete the case plans or engage in active efforts to facilitate reunification by creating a safe, healthy and stable home environment for [herself or her] children.
 * * *
 [Dunfee] has not complied with the case plans. *Page 22 
 * * *
 [Dunfee] has not demonstrated any initiative in trying to effect a reunification with her children.
 * * *
 [Dunfee] has failed to remedy the conditions that caused [the children] to be placed outside of her care and her home by: failing to make a stable and safe home for the children; being compliant with the case plans; completing counseling and psychological components of the case plan; becoming engaged and consistent with visits; maintaining stable housing; maintaining employment; addressing her substance abuse issues; and addressing her mental health issues.
 * * *
 [Dunfee has] demonstrated a lack of commitment to [her] children by:
 Failing to comply with the terms of the case plans;
 Failing to complete the case plans;
 Failing to substantially complete the case plans;
 Failing to significantly complete the case plans;
 Failing to maintain consistent [visits] with [her] children;
 Failing to maintain contact with [the Agency];
 Failing to maintain stable housing;
 Failing to complete substance abuse assessments;
 * * * and, *Page 23 
 [Dunfee's] failure to complete counseling.
 * * *
 [Dunfee has] been sporadic and inconsistent with [her] visits with [her] children. Even though regular visits were scheduled and facilitated by [the Agency], [Dunfee was not] consistent in [her commitment] in visiting with [her] children on a regular basis.
 [Dunfee has] not visited [her] children since March 28, 2008.
 [Dunfee has] not demonstrated a commitment to [her] children by appearing at this hearing to present and demonstrate [her] commitment to [her] children.
 * * *
 [Dunfee] has not been compliant with the case plan. [Dunfee] has a history of substance abuse. [Dunfee] has a history of using marijuana while she is pregnant. * * *She has also not completed counseling which would have facilitated efforts at reunification by addressing her substance abuse issues and her mental health diagnosis. She has not maintained contact with [the Agency] so that she could access services and assistance that was being provided. By moving to Kentucky, she has further frustrated reunification efforts with her children. Through so many moves, and by not maintaining contact, and by not complying through the attendance of counseling, [Dunfee] frustrated efforts by [the Agency] to provide reasonable accommodations to meet any of her claimed disabilities.
July 16, 2008, Judgment Entry, 80-83, 85-86, 92-93. After making these findings, the trial court then considered the factors set forth in R.C. 2151.414(D).
 {¶ 28} A review of the record indicates that all of the above findings are supported by evidence in the record. No evidence was presented to contradict the *Page 24 
above findings. The trial court, therefore, did not err in finding that pursuant to R.C. 2151.414(B)(1), the children could not or should not be placed with Dunfee within a reasonable period of time. Since the findings are supported by clear and convincing evidence, the fourth assignment of error is overruled.
 {¶ 29} The judgments of the Court of Common Pleas of Seneca County, Juvenile Division, are affirmed.
Judgments affirmed.
 SHAW, P.J., and PRESTON, J., concur.
[1] As the cases were not consolidated at that time, separate motions were filed for each child.
[2] This court notes that allegations concerning Cunningham's failures to comply were also made. However, Cunningham did not appeal the termination of his rights, so those issues are irrelevant to the matter before this court.
[3] Dunfee, Cunningham, Nevaeh, Keyara, and later the twins, would all be sharing one bedroom in a mobile home shared with a friend of Dunfee.
[4] Dunfee stopped receiving social security payments in October 2007. Tr. 277. *Page 1