OPINION *Page 2 
{¶ 1} Defendant-Appellant, John C. Fritz, appeals the judgment of the Seneca County Court of Common Pleas, convicting him of failure to comply with the order or signal of a police officer. On appeal, Fritz argues that the jury's verdict was not supported by sufficient evidence and was against the manifest weight of the evidence and that he was denied effective assistance of counsel. Finding that the evidence supported the jury's verdict and that Fritz was provided effective assistance of counsel, we affirm the judgment of the trial court.
 {¶ 2} In June 2006, the Seneca County Grand Jury indicted Fritz on one count of failure to comply with the order or signal of a police officer in violation of R.C. 2921.331(B),(C)(5)(a)(ii), a felony of the third degree, and one count of unauthorized use of a motor vehicle in violation of R.C. 2913.03(A), a misdemeanor of the first degree. Fritz entered a not guilty plea to both counts of the indictment.
 {¶ 3} On September 7, 2006, Fritz filed a notice of alibi indicating that he was in the company of Amanda and Martin Oldaker on the night of, and at the time, of the alleged offense. The State responded that Fritz's notice of alibi was not timely filed, because it needed to be filed not less than seven days before trial under Crim.R. 12.1, and that it did not specifically state where Fritz was at the time of the alleged offense. *Page 3 
 {¶ 4} On September 11 and 12, 2006, a jury trial was held. Prior to the commencement of the trial, Fritz's trial counsel withdrew his notice of an alibi witness, noting "I would withdraw the alibi witness as I have decided it's not — that's the strategy that I would like to pursue * * *." (Tr. p. 14). During the trial, the following testimony was presented.
 {¶ 5} Deputy Nate Elliott, a Deputy Sheriff with the Seneca County Sheriffs Office, testified that on May 13, 2006, at approximately 2 a.m., while wearing his uniform and driving a marked police cruiser, he observed a silver Grand Am four door fail to make a complete stop at the intersection of Township Road 47 and State Route 18 in Seneca County, Ohio; that after witnessing the vehicle fail to stop, he followed the vehicle, turned on his overhead lights and siren, and attempted to catch up to the vehicle to stop it; that after he turned on his lights and sirens, the vehicle accelerated to one-hundred to one-hundred twenty miles per hour; that the vehicle passed numerous residential homes and a school, was breaking the posted speed limits, and failed to stop at four stop signs; that during his pursuit, the driver lost control of the vehicle, drove through a yard, and parked behind a building; and, that Deputy Retting advised him that the vehicle was found at 5730 West Tiffin Street just east of a barn.
 {¶ 6} Deputy Elliot continued that he went to the location where the vehicle was and observed that it was unoccupied; that he began to check the area for the occupants of the vehicle, took pictures of the vehicle, and inventoried the *Page 4 
vehicle; and, that he ran a license plate check on the vehicle, which came back to Nova A. Amory, the registered owner of the vehicle.
 {¶ 7} Deputy Elliot further testified that he subsequently had a telephone conversation with Fritz regarding the pursuit and Fritz asked him why he was going to charge him with driving the vehicle; that he explained to Fritz that statements from people in the vehicle with him indicated that he was driving; and, that after telling Fritz that he knew that he had run toward a creek south of the vehicle, Fritz "got extremely belligerent", said some expletives, and hung up the phone. (Tr. p. 116).
 {¶ 8} On cross-examination, Deputy Elliot testified that when he first informed dispatch that he was attempting to stop the vehicle, he indicated that it was a white car and not a silver car, but noted that when his lights hit the vehicle, it appeared white; that he never actually saw the driver of the vehicle; that his pursuit lasted three to four minutes long; that he never activated a measuring device or radar to determine the vehicle's speed, but paced the vehicle; that school would not have been in session when the pursuit occurred; that there was traffic on the road during the pursuit; and, that he lost the vehicle he was pursuing for a few minutes.
 {¶ 9} Deputy Elliot continued that another officer found the vehicle, which was abandoned; that Fritz was not found, but Tracy Carter and Robert Norville, Jr. *Page 5 
were found at the scene by a K-9 officer; and, that he was told by Carter and Norville that they had been occupants of the vehicle and that Fritz was driving it.
 {¶ 10} Robert Norville, Jr. testified that he was a passenger in the vehicle, which he identified as a gray Grand Am, Fritz drove on May 13, 2006; that he and Tracy Carter were in the vehicle with Fritz; that he and Carter were drinking in the vehicle; that he did not hear any police sirens and Fritz pulled over shortly after the police lights were activated; that he could not remember how many turns Fritz made before pulling over; that once Fritz parked the vehicle, everyone in the vehicle left and he went about a half a block behind the car; that a cop came up and arrested him after he left the vehicle; and, that he had not spoken to Fritz since May 13, 2006.
 {¶ 11} On cross-examination, Norville indicated that he has known Fritz for twenty-five years and that he did not know Nova Amory personally. On redirect-examination, Norville indicated that he did not want to come and testify against his friend and that he was telling the truth.
 {¶ 12} Deputy Ryan Rettig, a Deputy Sheriff with the Seneca County Sheriffs Office, testified that on May 13, 2006, he assisted Deputy Elliott in a vehicle pursuit; that he found the Grand Am that Deputy Elliott was pursuing parked between two buildings; that he noticed the vehicle had run over a sapling; that there was no one inside the vehicle and the vehicle smelled like it had been *Page 6 
run hard; and, that he assisted the K-9 unit in locating two potential suspects near the scene.
 {¶ 13} On cross-examination, Deputy Rettig testified that he only saw the car after it had been parked; that after the two suspects were located, he was certain that the vehicle was the one Deputy Elliott pursued; that Fritz was not located near the scene; and, that it took the K-9 unit a few minutes to locate the two subjects.
 {¶ 14} Officer Joe Feld, a K-9 handler and police officer with the City of Tiffin, testified that on May 13, 2006, he assisted Deputies Elliott and Rettig and another deputy in locating suspects involved in a vehicle pursuit; that when he arrived at the scene, he saw a silver vehicle parked with no suspects near the vehicle; that his K-9 first found Norville within a few minutes and then found Carter several minutes later; that his K-9 had bit Carter; and, that his K-9 did not locate Fritz at the scene.
 {¶ 15} Nova Amory testified that she has a child with Fritz; that on May 13, 2006, she owned a 2003 Pontiac Grand Am GT; that pictures taken at the scene were of her vehicle; that on May 13, 2006, she filed a police report, because her vehicle was missing; that she left her vehicle unlocked, with the keys inside, outside of her residence on the night of May 13, 2006; that she had not given anyone permission to drive her vehicle, but that Fritz had driven it without her *Page 7 
permission in the past; that neither Norville nor Carter has driven her car; and, that she did not want charges filed in this case.
 {¶ 16} On cross-examination, Amory testified that both Norville and Carter had been in her residence and would have known that she might have left her keys inside her vehicle and that she would want Norville and Carter put in jail if either of them used her vehicle.
 {¶ 17} Greg Siebenaller testified that he owned the lawn that the vehicle was parked in; that he did not know Fritz, Norville, or Carter; that he did not give Fritz permission to drive onto his lawn; that he noticed some tire marks through the south part of his lawn and a small tree was bent over; and, that he did not know of anyone in his residence who made the changes to his lawn.
 {¶ 18} Officer Christopher Potter, a Corrections Officer at the Seneca County Jail, testified that on May 27, 2006, he was working in the jail as the booking officer; that after making a phone call, Fritz was being bonded out of the jail; that he and another officer were watching an episode of Cops, which included an incident with a K-9 officer biting a person; that he made a comment to the other officer about how the K-9's bite would hurt, to which Fritz commented to him "that night I saw the dog tear Tracy Carter up." (Tr. p. 199). Officer Potter continued,
 And [Fritz] said, then he made the next comment, he said "I was there and I saw the Tiffin dog tear up Tracy Carter." And, at that time my direction — all my attention focused on Mr. Fritz. And, I looked at him and he said — he goes, "yeah, I was there." *Page 8 
 He says, "I told everybody I wasn't there but I was there." He goes, "that dog sure did tear up Tracy. But them Tiffin cops are pretty stupid because all they had to do was follow the cigarette butts in a big circle to my location."
 [Fritz] said "I sat there and watched them tear Tracy up." He said, "then I made a phone call and walked home." He said, "all they had to do was follow the cigarette butts right to my house. I told my baby's mama that somebody else took the car because I didn't want her to think I stole it," he goes, "but I was there."
(Tr. p. 200). Officer Potter then testified that he did not know why Fritz would have known that Carter was bit by a dog unless he was present at the scene; that he later overheard Fritz tell another inmate that "[he has] two crack heads testifying against him in court * * *" (tr. p. 201); and, that he has no personal stake in the outcome of this case.
 {¶ 19} On cross-examination, Officer Potter testified that Fritz had been in jail seven days prior to May 27, 2006, and that he had not talked to Fritz prior to that date, but had taken his photo.
 {¶ 20} Officer Kristopher James Stafford, a Corrections Officer at the Seneca County Jail, testified that on May 27, 2006, Fritz was talking to Officer Potter; that he overheard Fritz say "something about Tracy Carter getting chewed on by * * * Tiffin's K-9 unit" (tr. p. 223); that Fritz also mentioned to him that if he was a road deputy that "he could out run me in a pursuit" (tr. p. 223); and, that he does not have a stake in the outcome of this case.
 {¶ 21} After Officer Stafford testified, the State rested, and Fritz moved for a judgment of acquittal under Crim.R. 29, which was overruled. Fritz did not *Page 9 
present any further evidence and renewed his Crim.R. 29 motion, which was again overruled.
 {¶ 22} The jury found Fritz guilty on the count of failure to comply with the order or signal of a police officer in violation of R.C.2921.331(B),(C)(5)(a)(ii), a felony of the third degree and not guilty on the count of unauthorized use of a motor vehicle in violation of R.C.2913.03(A), a misdemeanor of the first degree. Subsequently, Fritz was sentenced to four years in prison.
 {¶ 23} It is from this judgment Fritz appeals, presenting the following assignments of error for our review. Assignment of Error No. I DEFENDANT FRITZ WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND WAS PREJUDICED AS A RESULT.
 Assignment of Error No. II THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 Assignment of Error No. III THE RECORD CONTAINS INSUFFICIENT EVIDENCE TO SUPPORT APPELLANT'S CONVICTION OF FAILURE TO COMPLY WITH ORDER OR SIGNAL OF POLICE OFFICER.
 {¶ 24} Due to the nature of Fritz's assignments of error, we elect to address them out of order and the second and third assignments of error together.
 Assignment of Error Nos. II III *Page 10 {¶ 25} In his second assignment of error, Fritz argues that his conviction was against the manifest weight of the evidence. In his third assignment of error, Fritz argues that the record contains insufficient evidence to support his conviction. We disagree.
 {¶ 26} When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Monroe, 105 Ohio St.3d 384, 392, 2005-Ohio-2282, citingState v. Jenks (1981), 61 Ohio St.3d 259. Sufficiency is a test of adequacy, State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52, and the question of whether evidence is sufficient to sustain a verdict is one of law. State v. Robinson (1955), 162 Ohio St. 486.
 {¶ 27} When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id. *Page 11 
 {¶ 28} R.C. 2921.331(B) provides "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." Further, R.C. 2921.33 1(C)(5)(a)(ii) provides "[a] violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt: * * * The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property."
 {¶ 29} Here, Fritz argues that since none of the police officers were able to identify him as the driver of the vehicle in question, he was not found at the scene of the incident, and no evidence was taken from the vehicle, which indicated that he was driving the vehicle, the State must rely on the testimony of Carter and Norville to prove that he was actually driving the vehicle in question. Fritz further asserts that since both Carter and Norville were drinking and did not have permission to be in the vehicle, their testimony was not credible. Accordingly, Fritz argues that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.
 {¶ 30} When we review the record for sufficiency of the evidence, we are required to view the evidence in a light most favorable to the prosecution and doing so, we find that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Specifically, Deputy *Page 12 
Elliott testified that on May 13, 2006, at approximately 2 a.m., while wearing his uniform and driving a marked police cruiser, he observed a silver Grand Am four door fail to make a complete stop at the intersection of Township Road 47 and State Route 18 in Seneca County, Ohio; that after witnessing the vehicle fail to stop, he followed the vehicle, turned on his overhead lights and siren, and attempted to catch up to the vehicle to stop it; that after he turned on his lights and sirens, the vehicle accelerated to one hundred to one hundred twenty miles per hour; that the vehicle passed numerous residential homes and a school, was breaking the posted speed limits, and failed to stop at four stop signs; that during his pursuit, the driver lost control of the vehicle, drove through a yard, and parked behind a building; and, that Deputy Retting advised him that the vehicle was found at 5730 West Tiffin Street just east of a barn. Additionally, Norville testified that Fritz was driving the vehicle in question and both Officer Potter and Officer Stafford testified that Fritz indicated that he was at the scene and saw Carter being bitten by the K-9 officer.
 {¶ 31} Also, although Fritz argues that some of the State's witnesses' testimony was not credible, the jury was free to believe all, part, or none of any witness' testimony. State v. Antill (1964), 176 Ohio St. 61. Here, the jury chose to believe the State's evidence that Fritz was driving the vehicle in question. Because the weight to be given the evidence and the credibility of witnesses are primarily reserved for the trier of fact, State v. DeHass (1967), 10 Ohio St.2d 230, *Page 13 
paragraph one of the syllabus, we find that Fritz's conviction was not against the manifest weight of the evidence.
 {¶ 32} Finding that the evidence supports Fritz's conviction, Fritz's second and third assignments of error are overruled.
 Assignment of Error No. I {¶ 33} In his first assignment of error, Fritz argues that he was denied his right to effective assistance of counsel.
 {¶ 34} An ineffective assistance of counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result.State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. Id. at paragraph three of syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. State v. Waddy (1992), 63 Ohio St.3d 424, 433, superseded by constitutional amendment on other grounds as recognized byState v. Smith, 80 Ohio St.3d 89, 103, 1997-Ohio-355.
 {¶ 35} Furthermore, the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance. State v. Malone (Dec. 13, 1989), 2d Dist. No. 10564. "Ineffective assistance does not exist merely *Page 14 
because counsel failed `to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it.'" Id., quoting Smith v. Murray (1986), 477 U.S. 527.
 {¶ 36} Fritz argues that his trial counsel was ineffective because his counsel failed to timely file his notice of alibi, which indicated that Fritz was at another location at the time of the incident and there were two persons who would have testified as to where he was. Additionally, Fritz argues that his trial counsel was ineffective because he failed to call his alibi witnesses to testify. We disagree.
 {¶ 37} Crim.R. 12.1 provides:
 Whenever a defendant in a criminal case proposes to offer testimony to establish an alibi on his behalf, he shall, not less than seven days before trial, file and serve upon the prosecuting attorney a notice in writing of his intention to claim alibi. The notice shall include specific information as to the place at which the defendant claims to have been at the time of the alleged offense. If the defendant fails to file such written notice, the court may exclude evidence offered by the defendant for the purpose of proving such alibi, unless the court determines that in the interest of justice such evidence should be admitted.
 {¶ 38} Here, the record does show that the notice was untimely filed. However, there is nothing in the record to indicate either when or under what circumstances Fritz's trial counsel became aware of the potential alibi witnesses. Therefore, we cannot determine, based upon this record, whether the failure to timely file notice of alibi constituted ineffective assistance of counsel. See State v. Stevens (Apr. 3, 1998), 2d Dist. No. 16509. *Page 15 
 {¶ 39} Generally, a trial counsel's decision whether to call a particular witness falls within the rubric of trial strategy, and will not be second guessed by a reviewing court. State v. Williams,99 Ohio St.3d 493, 2003-Ohio-4396. Even debatable trial tactics and strategies do not constitute ineffective assistance of counsel. State v.Clayton (1980), 62 Ohio St.2d 45. Trial counsel may have employed a reasonable trial strategy in this case by choosing not to call these potential alibi witnesses if, for example, counsel determined that the witnesses lacked credibility and would not assist the defense. SeeState v. Brown, 2d Dist. No. 19776, 2003-Ohio-5738; State v. Allen (Jan. 22, 1998), 8th Dist. No. 72231; State v. Dawson (July 30, 1997), 9th Dist. No. 18216. Indeed, unreliable witnesses can harm a defendant who offers their testimony in evidence.
 {¶ 40} Fritz alleges that the proposed testimony of the potential alibi witnesses would have shown that he was at another location at the time of the incident. However, the proposed testimony of the potential alibi witnesses was contradicted by the passengers in the vehicle who identified Fritz as the driver of the vehicle and by the corrections officers who indicated that Fritz stated that he was at the incident and could have been found. Therefore, trial counsel, after weighing the costs and benefits of the potential alibi testimony, may reasonably have made a strategic decision not to call these witnesses because they were not credible. In fact, trial counsel noted on the record that his withdrawal of the notice of alibi was for strategic reasons. *Page 16 
 {¶ 41} Fritz has failed to demonstrate substantive grounds for relief with respect to his ineffective assistance of trial counsel claim. Viewing the evidence in a light most favorable to Fritz, reasonable minds can only conclude that he failed to demonstrate a genuine issue as to whether trial counsel's performance was deficient and fell below an objective standard of reasonableness, much less a reasonable probability of a different outcome but for counsel's alleged errors.
 {¶ 42} Accordingly, Fritz's first assignment of error is overruled.
 {¶ 43} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 SHAW and WILLAMOWSKI, JJ., concur. *Page 1