[Cite as *State v. Schlosser*, 2011-Ohio-4183.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
UNION COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,              CASE NO. 14-10-30

     v.

JOSHUA A. SCHLOSSER,            O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Marysville Municipal Court
Trial Court No. CRB 1000296

Judgment Affirmed

Date of Decision: August 22, 2011

APPEARANCES:

    *Stewart E. Roberts* **for Appellant**

    *Anthony W. Eufinger* **for Appellee**

**ROGERS, P.J**

{¶1} Defendant-Appellant, Joshua A. Schlosser ("Joshua"), appeals the decision of the Marysville Municipal Court, convicting him of domestic violence. On appeal, Joshua argues that the trial court erred by allowing the arresting police officer to remain in the courtroom and testify following an order of separation of witnesses; that he received ineffective assistance of counsel; and, that the jury verdict was against the manifest weight of the evidence. Based upon the following, we affirm the judgment of the trial court.

{¶2} Amber Schlosser ("Amber") and Joshua were married in 2007 and have one child together, Sierra Schlosser. Amber and Joshua were married at the time of the incident but were in the initial stages of a separation and divorce. At the time of the incident, Joshua had a key to and technically resided at their apartment, but he was staying, and most of his possessions were, elsewhere.

{¶3} In April 2010, Joshua was charged by complaint with one count of domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree. The charge arose from an incident during which Joshua allegedly placed Amber in a bear hug, took her to the ground, pushed her head into the floor, grabbed her around her neck, applied pressure, and threatened her, during an argument over reading each other's text messages. A temporary protection order was issued against Joshua.

{**¶4**} In the same month, Joshua entered a plea of not guilty to the charge and requested a jury trial. Additionally, Joshua filed a motion for discovery and a notice of intention to use evidence at trial, including the following: audio/video recording of Amber, Jeremy Pohlman (Amber's brother), and Heather Pohlman.

{**¶5**} On September 27, 2010, the case proceeded to a jury trial. At trial the following evidence was heard.

{**¶6**} Amber testified that on April 8, 2010, she came home from work and Joshua was at their residence. They began arguing about text messages she sent to her brother which led Joshua to take her phone to read the messages. Amber asked for it back, but Joshua would not return it, so Amber grabbed Joshua's cell phone. Amber went to leave the bedroom with the phone and Joshua stopped her, twisted her arm behind her back, squeezed her hand so firmly that it caused her pain, and she let go of the cell phone. Joshua then pushed her against the bathroom door, put her into a bear hug, and took her down to the floor. She bit, kicked, and hit him in order to get him to let her go. He then pushed her face into the carpet, put his hand around her throat, applying pressure, and told her he would put her "six feet under." Trial Tr., p. 47. Amber testified that she felt like she could not breathe; that she thought he was going to kill her, and went limp. Then Joshua let go and left the bedroom to go to their daughter. Amber went into the kitchen and began to clean and do laundry in order to distance herself. Joshua

then came into the kitchen and began groping her and tried to kiss her. He also repeatedly asked if she intended to call the police. Amber responded that she would not, and Joshua left. After calling her friend and her mother, Amber called the police. Amber also testified that she suffers from mood swings and takes medication to control her mood swings, depression, and to help her sleep. During Amber's cross-examination, Joshua's attorney played the audio recording Joshua took at some point in time during the incident.

{¶7} Officer Back testified that on April 8, 2010, he interviewed Amber at Amber's apartment; that she told him that earlier, Joshua had been going through her cell phone, and that when he refused to give it back to her, she grabbed his phone. Amber told Officer Back that Joshua grabbed her arm, twisted it behind her back and squeezed her hand. Joshua put her in a bear hug, they went to the ground, and she bit him. She also told Officer Back that Joshua forced her face into the carpet and at some point he put his hands around her neck, applying pressure. She also reported that once the incident was over, she went into the kitchen where Joshua began groping her and asking her if she was going to call the police. Officer Back testified that on that evening, Amber's face and neck were red, but that she seemed rather calm, and that he believed she was giving him honest answers. He further testified that the story Amber told him on the night of April 8, 2010 was consistent with her testimony at trial.

{¶8} Officer Back testified that he interviewed Joshua on April 8, 2010 as well. He reported that Joshua voluntarily went to the police department after the police called to inform him of the charges, was given his Miranda rights, and gave a verbal statement. Joshua said that he was sitting on the bed, going through Amber's phone, when Amber grabbed his phone. He stated that they stood up, she bit him, and then they went to the ground. Then he got up and left. Officer Back testified that Joshua seemed very antsy, had an inconsistent story, and rarely made eye contact with him that evening. On cross-examination, Joshua's attorney showed Officer Back photos of Amber's neck and Joshua's bite mark.

{¶9} Joshua testified that when the argument started, he was sitting on the bed reading the text messages on her phone. His phone was sitting on his lap with the audio recorder on. She grabbed his phone and then instantly backed up against the wall and was trying to bend it backwards. He got up and put his hand over her on the wall and reached for her phone. She bit him. Then he tried to back away while holding onto her phone and their feet became intertwined, causing them to fall to the ground. He got up and then went to their daughter. Joshua testified that that was the extent of the physical contact, that he never twisted her arm back, that he never threatened her, that he never groped her, and that he only asked her one time if she was going to call the police. He further testified that he pointed out to Officer Back several times that Amber did not have any marks on her.

{¶10} The jury ultimately returned a verdict of guilty and the trial court sentenced Joshua to ninety days in jail with eighty days suspended, imposed three years of probation, ordered him to complete a domestic violence counseling program, and imposed a three hundred dollar fine plus court costs. Joshua timely filed his notice of appeal, alleging the following assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO THE APPELLANT, ABUSING ITS DISCRETION, BY ALLOWING THE ARRESTING POLICE OFFICER TO REMAIN IN THE COURTROOM FOLLOWING AN ORDER OF SEPARATION OF WITNESSES, AND FURTHER BY ALLOWING THAT POLICE OFFICER TO TESTIFY AFTER HE HAD LISTENED TO THE TESTIMONY OF THE ALLEGED VICTIM.**

*Assignment of Error No. II*

**APPELLANT DID NOT RECEIVE A FAIR AND JUST TRIAL BECAUSE OF THE INEFFECTIVE ASSISTANCE OF HIS TRIAL COUNSEL.**

*Assignment of Error No. III*

**THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO THE APPELLANT, AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, BY SENDING THE CASE TO THE JURY AND ACCEPTING THE JURY'S VERDICT OF GUILTY.**

*Assignment of Error No. I*

{¶11} In his first assignment of error Joshua asserts that the trial court erred by allowing Officer Back to remain in the courtroom after the judge had ordered a separation of the witnesses. Specifically, Joshua argues that he was prejudiced because Officer Back was able to listen to the testimony of the prosecutor's main witness, Amber, then testify regarding the events of the evening, and then bolster her credibility by testifying that her story had not changed since her initial report.

{¶12} The State contends that the trial court did not err by allowing Officer Back to be present and testify. Specifically, the State argues that Joshua's trial counsel did not object to the officer's presence, but that if he had objected, Ohio Rule of Evidence 615(B) allows for officers to remain in the courtroom and testify. Further, the State asserts that any error on behalf of the trial court in this regard was harmless as the officer's presence and testimony did not prejudice Joshua. We agree with the assertion that the presence and testimony of Officer Back did not prejudicially affect the proceedings.

{¶13} We apply a plain error standard of review as appellant's counsel did not object to Officer Back's presence in the courtroom or to his testimony. Crim.R. 52(B) requires for plain error that there be an error, the error must be an "obvious" defect in the trial proceedings, and the error must have affected "substantial rights." *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d

1240. To affect "substantial rights," an error must have a "substantial and injurious effect or influence in determining the jury's verdict." *Kotteakos v. United States* (1946), 328 U.S. 750, 776, 66 S.Ct. 1239. Plain error exists only in the event that it can be said that "but for the error, the outcome of the trial would clearly have been otherwise." *State v. Biros* (1997), 78 Ohio St.3d 426, 436, 678 N.E.2d 891; see *State v. Johnson*, 3d Dist. No. 2-98-39, 1999-Ohio-825. Plain error is to be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Barnes*, 94 Ohio St.3d at 27. The defendant bears the burden of demonstrating that a plain error affected his substantial rights. *United States v. Olano* (1993), 507 U.S. 725, 734, 113 S.Ct. 1770; *State v. Perry*, 101 Ohio St.3d 118, 120, 802 N.E.2d 643.

{¶14} Evid.R. 615 governs the separation and exclusion of witnesses and provides:

> **(A)  Except as provided in division (B) of this rule, at the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion.**
>
> * * *
>
> **(B) This rule does not authorize exclusion of any of the following persons from the hearing:**
>
> * * *

**(2)  an officer or employee of a party that is not a natural person designated as its representative by its attorney. . .**

{¶15} The transcript reveals that the trial court granted a motion for separation of witnesses and directed anyone present in the courtroom who intended to testify to leave the courtroom until further notice.  The trial court stated that it would rely on the attorneys to help him enforce the order.  The parties do not dispute that Officer Back remained in the courtroom during Amber's testimony and then testified.

{¶16} A thorough review of the transcript does not reveal that the State moved to designate Officer Back as its representative or that Officer Back was seated at counsel table.  Contrary to the State's request to infer that such motion was made as was customarily done by the prosecuting attorney, we decline to make such inference.

{¶17} Joshua asserts that allowing Officer Back to remain in the courtroom during Amber's testimony and then using his presence to bolster her credibility caused prejudice to him.  He highlights the following testimony:

> **[Prosecuting attorney]: Now, you've had the opportunity to listen and observe her testimony today have you?**
>
> **[Officer Back]: Yes.**
>
> **[Prosecuting attorney]: And based on your own independent knowledge of what she told you April 8th and today, are the counts (sic) consistent with one another?**

**[Officer Back]: Yes, they are.**

Hearing Tr., p. 81. Joshua asserts that in the absence of this testimony, there would have been reasonable doubt and a reasonable probability that the result of the trial would have been different. We find that, without more, Joshua has failed to establish that, but for Officer Back's presence during Amber's testimony and his testimony regarding the consistency of her statements, the outcome clearly would have been otherwise. This is not the exceptional circumstance where a manifest miscarriage of justice occurred. Accordingly, we overrule Joshua's first assignment of error.

*Assignment of Error No. II*

{¶18} In his second assignment of error, Joshua asserts that he was denied effective assistance of counsel. Joshua specifically alleges that his attorney failed to present certain evidence, to call witnesses, to adequately prepare for cross-examination, to object to Officer Back's presence and testimony in violation of the trial court's separation order, to make certain objections, to prepare a transcript of the audio recordings, to move to admit evidence, to move for an acquittal, and failed to timely file a motion for a new trial.

{¶19} The State contends that none of the alleged deficiencies in trial counsel's representation, individually or collectively, meet the standard of ineffective assistance of counsel.

{¶20} In order to succeed on a claim of ineffective assistance of counsel, an appellant must "show that his trial counsel was deficient and that [such deficiency] prejudiced the defense . . ." *Strickland v. Washington* (1984), 466 U.S. 668, 669 at paragraph three of the syllabus, 104 S.Ct. 2052. Specifically, an appellant must establish 1) that the trial counsel's representation fell below an objective standard of reasonableness, and 2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* adopted by Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. *State v. Waddy* (1992), 63 Ohio St.3d 424, 433, superseded by constitutional amendment on other grounds as recognized by *State v. Smith*, 80 Ohio St.3d 89, 103, 1997-Ohio-355.

{¶21} In reviewing the alleged deficiency of trial counsel, courts presume that a properly licensed attorney executes his duties in an ethical and competent manner. *State v. Smith* (1985), 17 Ohio St.3d 98, 100, 477 N.E.2d 1128. The courts are to refrain from second-guessing the strategic decisions made by trial counsel. *State v. Sallie* (1998), 81 Ohio St.3d 673, 674, 693 N.E.2d 267.

Furthermore, the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance. *State v. Malone* (1989), 2d Dist. No. 10564, 1989 WL 150798. "Ineffective assistance does not exist merely because counsel failed 'to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it.'" Id., quoting *Smith v. Murray* (1986), 477 U.S. 527, 106 S.Ct. 2661.

{¶22} Joshua alleges fifteen different deficiencies in his trial counsel's assistance, which for efficiency reasons, we have grouped into the following four categories and will address them accordingly: failure to prepare for trial; failure to present evidence, cross-examine witnesses, and admit exhibits; failure to object; and, failure to file motions.[1]

*Failure to Prepare for Trial*

{¶23} Joshua asserts that his trial counsel failed to prepare for trial by failing to review Amber's prior testimony from the temporary protection order hearing, by failing to interview Officer Back prior to trial, and by failing to interview Amber's mother and friend, the people with whom she spoke after the altercation but before she called the police. Joshua argues that had his trial

---

[1] Joshua also flatly argues that he received ineffective assistance of counsel as his trial counsel failed to prepare a transcript of the audio recording. Joshua has failed to show why this results in ineffective assistance. A review of the record similarly reveals no such indication. Therefore, we decline to address it.

counsel so prepared, he would have been able to more thoroughly cross-examine the witnesses.

{¶24} Initially, we note that the record is silent as to any pre-trial preparation by Joshua's trial counsel and therefore does not support this argument. Nonetheless, in order to succeed on this claim, Joshua needs to show that had his trial counsel interviewed Officer Back, the mother, and the friend, and reviewed Amber's prior testimony, the outcome at trial would have been different. As there is no indication as to the content of the mother and friend's potential statements, or that the statements would have been admissible, Joshua has failed to establish any prejudice resulting from his counsel's alleged failure to interview them. Further, assuming Joshua's trial counsel did not review Amber's prior testimony, he nonetheless presented a strong cross-examination of her and Officer Back. As such, there is no indication that without the alleged failure of trial counsel, the outcome would have been different.

*Failure to Present Evidence, Cross-examine Witnesses, and Admit Exhibits*

{¶25} Joshua asserts that his trial counsel failed to present specific evidence regarding Amber's medications and whether she was taking them according to her doctor's instructions; that he failed to present evidence to show that Amber started, continued, and exacerbated the altercation by biting him; that he failed to explore the delay in Amber's telephone call to the police; that he failed to call

witnesses; that he failed to request the court to play a video recording of Joshua and Amber's brother; and, that he failed to move to admit any of the exhibits, including Amber's written statement.

{¶26} An appellate court reviewing an ineffective assistance of counsel claim will not second-guess counsel's strategy in deciding whether to call a witness, and the manner of the attorney's direct and cross-examination of witnesses. *State v. Fritz,* 3d Dist. No. 13-06-39, 2007-Ohio-3138, ¶39, citing *State v. Williams,* 99 Ohio St.3d 493, 2003-Ohio-4396; *State v. Clayton* (1980), 62 Ohio St.2d 45, 402 N.E.2d 1189; *In re Smith*, 3d Dist. No. 9-04-35, 2005-Ohio-149, ¶57, citing *State v. Manley,* 3d Dist. No. 1-01-159, 2002-Ohio-5582, ¶22. Furthermore, tactical decisions, even if debatable, generally, do not constitute a deprivation of effective counsel. Id.

{¶27} Joshua's assertions that his trial counsel failed to present specific evidence regarding Amber's medications and whether she was taking them as prescribed, that he failed to present specific evidence that Amber started, continued, and exacerbated the altercation by biting him, and that he failed to explore the delay in Amber's phone call to the police are not supported by the record. Joshua's trial counsel did in fact cross-examine Amber regarding her prescription medications and whether she was taking them as prescribed by her doctor. Trial Tr., pp. 56-58. Joshua's trial counsel also cross-examined her about

starting the altercation, her demeanor, and biting him. Trial Tr., pp. 59-60, 69. He then cross-examined Officer Back regarding the photographs of the bite mark on Joshua and the red marks on Amber. Trial Tr., pp. 93-95. The record also reveals that Joshua's trial counsel cross-examined both Amber and Officer Back as to the delay and with whom she spoke after Joshua left. Trial Tr., pp. 65-66, 70-71, 89-91. Further, although Joshua may have preferred a more rigorous cross-examination of the prosecution's witnesses, the manner in which an attorney cross-examines witnesses is well-within the rubric of trial strategy. *In re Smith*, 2005-Ohio-149 at ¶57.

**{¶28}** The record does support, however, Joshua's contention that his trial attorney did not play a video recording of him and Amber's brother and similarly did not call Amber's brother as a witness. However, as there is nothing in the record which demonstrates the contents or relevance of the video recording, Joshua has failed to establish any prejudicial effect from the failure to play the video, and has similarly failed to demonstrate that this was anything other than trial strategy. The record does contain a written statement from Amber's brother, but it does not reveal any information that would establish, or even have a tendency to show, that Joshua did not commit domestic violence. Docket No. 25. As his testimony would not likely have aided Joshua's defense, no prejudice

resulted from its absence. Further, trial counsel's decision not to call him as a witness is safely within the rubric of trial strategy.

{¶29} Lastly, as Joshua contends, the record reveals that Joshua's trial counsel failed to admit any exhibits, including pictures of Amber's face and neck and Joshua's bite mark, and Amber's written statement to the police. However, Joshua fails to demonstrate prejudice or how the outcome at trial clearly would have been different as a result of failing to admit them. The documents were introduced at trial and their content was thoroughly discussed. During cross-examination, Officer Back testified that the photos of Amber revealed no visible injuries. Trial Tr., p. 95. Officer Back also testified that there was a photo of Joshua's bite mark. Trial Tr., p. 93. Officer Back discussed the significance of the photos in demonstrating domestic violence. Further, Officer Back testified to the contents of Amber's written statement, and that it did not include the fact that Joshua twisted her arm behind her back. Trial Tr., pp. 109-10. Therefore, the evidence, although not admitted, was presented to the jury in a testimonial manner, and the jury was able to evaluate the weight of such evidence. Joshua has failed to demonstrate that prejudice resulted to the extent that the outcome at trial clearly would have been different.

*Failure to Object*

{¶30} Joshua asserts that his trial counsel failed to object to Officer Back remaining in the courtroom despite the order for separation of witnesses; to Officer Back testifying as a witness after he heard Amber's testimony; and to Officer Back "vouch[ing] for [Amber's] credibility." Appellant's brief, p. 8.

{¶31} This Court has previously found that the failure to object to testimony at trial is generally trial strategy. *State v. Ray*, 3d Dist. No. 14-05-39, 2006-Ohio-5640, ¶63, citing *State v. Lockett*, 49 Ohio St.2d 48, 358 N.E.2d 1062, paragraph nine of the syllabus, reversed in part by *Lockett v. Ohio* (1978), 438 U.S. 536, overruled on other grounds in *State v. Downs* (1977), 51 Ohio St.2d 47, 364 N.E.2d 1140.

{¶32} Joshua's assertions fail to overcome the presumption of trial strategy and fail to establish that he was prejudiced by counsel's failure to object to the officer's presence during Amber's testimony and his testimony. A review of the record shows that the only evidence that clearly resulted from Officer Back's presence in the courtroom was his testimony that Amber's in-court statements were consistent with her statements on the night of the incident.[2] Joshua asserts that at this point Officer Back "vouched for her credibility." Consistency in statements is different from a witness' credibility. Further, it can be argued that Joshua's trial counsel's failure to object was trial strategy as, following his

---

[2] See Officer Back's testimony on page 7, supra.

objection, the State would have moved to allow Officer Back's testimony under Evid.R. 615(B).[3] Therefore, not only is Officer Back's presence and testimony not prejudicial, but Joshua has failed to establish that the trial counsel's failure to object is anything other than trial strategy.

*Failure to File Motions*

**{¶33}** Joshua asserts that he received ineffective assistance of counsel as his trial counsel failed to move for an acquittal pursuant to Crim.R. 29 and to timely file a motion for a new trial pursuant to Crim.R. 33.

**{¶34}** This Court has previously held that a failure to file a motion, in and of itself, is not per se ineffective assistance of counsel. *In re Smith*, 3d. Dist. 5-01-34, 2002-Ohio-695, citing *State v. Vires* (1970), 25 Ohio App.2d 70, 266 N.E.2d 245; *State v. Madigral* (2000), 87 Ohio St.3d 378, 389; *Kimmelman v. Morrison* (1986), 477 U.S. 365, 384, 106 S.Ct. 2574. Without proving that trial counsel was deficient for failing to make certain motions and that those motions had a reasonable probability of success, the ineffective assistance of counsel claim fails. Id.

**{¶35}** "Failure to move for an acquittal under Crim.R. 29 is not ineffective assistance of counsel, where the evidence in the state's case demonstrates that reasonable minds can reach different conclusions as to whether the elements of the

---

[3] See the State's argument as outlined in the first assignment of error on page 5, supra.

charged offense have been proven beyond a reasonable doubt, and that such a motion would have been fruitless." Crim. R. 29; *State v. Giddens*, 3d Dist. No. 1-02-52, 2002-Ohio-6148, ¶27, citing *State v. Bradley* (1989), 42 Ohio St.3d 136, 141-43, 538 N.E.2d 373. The record demonstrates that the State's evidence, which consisted of the testimony of Amber and Officer Back, showed that reasonable minds could have reached different conclusions as to whether the elements of domestic violence had been proven beyond a reasonable doubt, and that a motion for acquittal would have been properly overruled.

{¶36} Similarly, Joshua's flat assertion that his trial counsel rendered ineffective assistance by failing to file a motion for a new trial under Crim.R. 33 fails to demonstrate that such motion would have been granted. He provides neither an argument in support of this assertion nor identifies a subsection under which such motion allegedly should have been filed or granted. Without such support, this Court is left with nothing other than conjecture to evaluate his contention. Therefore, we find that Joshua's allegation of ineffective assistance of counsel for failure to file motions is meritless.

{¶37} These fifteen factors, individually as well as collectively, fail to establish ineffective assistance of counsel. Accordingly, we find that Joshua's second assignment of error lacks merit, and overrule it.

*Assignment of Error No. III*

{¶38} In his third assignment of error, Joshua argues that the trial court erred by sending the case to the jury and accepting the jury's verdict of guilty. He argues that since the State did not meet its burden with respect to three of the four elements of domestic violence, the guilty verdict was against the manifest weight of the evidence.

{¶39} The State contends that the conviction was supported by competent, credible evidence through the testimony of Amber, Officer Back, and Joshua. We agree.

{¶40} When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175. A new trial should be granted only in the exceptional case in which the evidence weighs heavily against conviction. Id.

{¶41} {¶ 12} Under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. Id. Although the appellate court may act as a thirteenth juror, it should give due deference to the findings made by the fact-finder. *Thompkins*, 78 Ohio St.3d at 388.

{¶42} The jury found Joshua guilty of domestic violence, in violation of R.C. 2919.25(A), which provides: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Physical harm means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶43} Although there were different versions as to the extent of the physical altercation, both parties testified that there was a struggle over the cell phones, that Amber bit Joshua, and that it resulted in both parties on the floor. Amber further testified that Joshua twisted her arm behind her back, which caused her pain; that he pushed her face into the carpet; that he put his hands around her neck, which made it difficult to breathe; and, that he made a comment about putting her six feet underground. Any discrepancy in the testimony was available for consideration by the jury and after listening to, and observing the demeanor of

both parties, the jury found that there was enough credible evidence to establish beyond a reasonable doubt that Joshua committed the offense of domestic violence. After reviewing the transcript and the record, we cannot say that this was one of the extreme cases where the jury "lost its way" or committed a "manifest miscarriage of justice." Accordingly, we overrule Joshua's third assignment of error.

{¶44} Having found no error prejudicial to Joshua herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and PRESTON, J.J., concur.**

**/jlr**