[Cite as *State v. Barrera*, 2012-Ohio-3196.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                  CASE NO. 12-12-01

      v.

OLEA BARRERA,                         O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Putnam County Common Pleas Court
Trial Court No. 2011 CR 52

Judgment Affirmed

Date of Decision:

APPEARANCES:

    *Nicole M. Winget* for Appellant

    *Todd C. Schroeder* for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Olea Barrera, appeals the Putnam County Court of Common Pleas' conviction by jury trial of unlawful sexual conduct with a minor and subsequent sentence of three years imprisonment. Barrera argues her conviction is against the manifest weight of the evidence, that she was denied effective assistance of counsel, and that the trial court abused its discretion by sentencing her to three years imprisonment. For the reasons that follow, we affirm.

{¶2} On May 31, 2011, a Putnam County grand jury indicted Barrera on one count of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A)(B)(3), a felony of the third degree. (Doc. No. 1). On June 24, 2011, Barrera pleaded not guilty to the charge. (Doc. No. 7).

{¶3} The Putnam County Court of Common Pleas held a jury trial on October 17 and 18, 2011. (Jury Trial Volume I Tr. at 1). On October 18, 2011, the jury found Barrera guilty of unlawful sexual conduct with a minor and further found that Barrera was ten years or more older than the victim at the time of the offense. (Doc. No. 47).

{¶4} The trial court held a sentencing hearing on November 18, 2011. (Doc. No. 56). On December 6, 2011, the trial court filed its judgment entry sentencing Barrera to three years imprisonment. (*Id.*).

{¶5} Barrera filed a notice of appeal on January 4, 2012. (Doc. No. 60). She now raises three assignments of error for our review.

**Assignment of Error No. I**

**Defendant-appellant's conviction for the offense of unlawful sexual conduct with a minor was contrary to law and against the manifest weight of the evidence, since the state failed to prove an essential element of the offense.**

{¶6} In her first assignment of error, Barrera argues her conviction is against the manifest weight of the evidence because the State failed to prove the mental culpability element of the offense. Barrera contends the State did not prove that Barrera knew or was reckless in knowing that the victim was under the age of 16. Barrera argues that her conviction was consequently improper and that this Court should reverse it.

{¶7} R.C. 2907.04(A) states, "[n]o person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard." A person acts recklessly when:

with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the

consequences, he perversely disregards a known risk that such circumstances are likely to exist.

R.C. 2901.22(C).

{¶8} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'[weigh] the evidence and all reasonable inferences, consider the credibility of witnesses and [determine] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

{¶9} Barrera's conviction is supported by the record. The victim, D.C., testified that he was in the eighth grade in May 2011. (Jury Trial Volume II Tr. at 231). D.C. was friends with A.S., who was in the seventh grade at the time. (*Id.* at 232). D.C. knew Barrera because she was engaged to A.S.'s father, John Salyers. (*Id.* at 231). D.C. testified that he attended Fairview Junior High in May 2011, which was connected to the high school. (*Id.* at 232). D.C. occasionally saw Barrera while he was at school because she was one of the junior varsity

basketball coaches at the high school. (*Id*. at 233). Specifically, D.C. testified that he saw Barrera at the junior high's talent show and that they also made eye contact when he was in his eighth grade classroom. (*Id*. at 233-234). D.C. testified that he spent time with Barrera when he visited A.S. at A.S.'s house, where Barrera lived with A.S. and John. (*Id*. at 235). According to D.C., during the spring of 2011, "I'd see her more and [we would] play basketball together and just hang out." (*Id*. at 237). D.C. would spend the night at A.S.'s house and after everyone else was asleep, he and Barrera would stay up and continue to talk. (*Id*.). D.C. testified that their conversations would sometimes last for hours, and that they "talked about who was talking to who, who was having sex, just multiple things." (*Id*. at 238). D.C. testified that he was on the junior high track team for seventh and eighth grade students and that Barrera would watch the track meets. (*Id*. at 238). He had clothing that said "Junior High Fairview," which he wore when spending time with Barrera. (*Id*. at 239). D.C. was also in a baseball league for 13 and 14 year olds. (*Id*. at 240). John was one of the league's coaches, although he did not coach D.C. specifically. (*Id*.). John had coached D.C. in football when D.C. was in the fifth and sixth grades. (*Id*. at 241). D.C. testified that he and John talked about sports when Barrera was present. (*Id*. at 242). D.C. testified that he and Barrera also discussed her niece, who had just turned 16 and was in the grade

above D.C., and John's 15-year-old niece who was in D.C.'s grade.  (*Id*. at 242-243).

{¶10} D.C. testified that he and Barrera began texting each other in April 2011, and that they continued texting each other through May 2011.  (*Id*. at 243).  They texted each other while D.C. was on an eighth grade trip to Chicago, and they talked about the trip.  (*Id*.).  Barrera sent D.C. nude pictures of herself while he was on the trip.  (*Id*. at 257).  D.C. testified that in May 2011, he kissed Barrera when he stayed at A.S.'s house.  (*Id*. at 244-245).  He also testified that their conversations were sexual when they stayed up talking at night.  (*Id*. at 244).  D.C. testified that he turned 15 on May 16, 2011.  (*Id*. at 238, 276).  On May 30, 2011, he and Barrera made plans to have sexual intercourse.  (*Id*. at 249-250).  D.C. testified that he drove with Barrera to drop her son off for visitation with his father.  (*Id*. at 250-252).  On the way back, D.C. testified that he asked Barrera to have sexual intercourse, and that "[s]he said no; and then I asked her again, and she was like, okay."  (*Id*. at 253).  D.C. testified that Barrera pulled into a back road and they had intercourse.  (*Id*. at 254-255).  Barrera then dropped D.C. off at his house.  (*Id*. at 256).  D.C. testified that:

> I got home, and I sat there; and then my mom called.  And I wasn't-
> then she found out I wasn't at John's house, and then it just went
> downhill from there.  My phone was taken away.  They went

through it. Then John came over, and he asked if I had sex with her.

I put my head down. And he asked me again; and I said, yes.

(*Id.* at 257). D.C. testified that he did not tell Barrera that he was 16, and that he thought she should have known how old he was. (*Id.* at 238). D.C. also testified that he was Facebook friends with Barrera, his Facebook profile said that he was born in 1994, and that he had repeated a grade in school. (*Id.* at 282-284).

{¶11} Deputy Tim Shafer testified that he was dispatched on May 30, 2011 to investigate "a sexual crime between a female and a 15-year old child." (*Id.* at 210-211). Deputy Shafer testified that John had made the report. (*Id.*). According to Deputy Shafer, Barrera admitted that she had consensual sexual intercourse with D.C. (*Id.* at 213-215). Barrera told Deputy Shafer that "once the parental visitation was finished, they came over back towards Defiance around Kieferville, which is around the Continental area here in Putnam County, went on a back road, and that's where the sexual intercourse had taken place." (*Id.* at 214-215). Deputy Shafer testified that Barrera was 33 years old in May 2011. (*Id.* at 217-218).

{¶12} Barrera testified that she knew D.C.'s birthday was on May 16 and that he was in the eighth grade, but that she believed he was 16 on May 30, 2011. (Jury Trial Volume III Tr. at 419-421). Barrera testified that she knew he had repeated a grade from his Facebook profile and that his profile listed his birth date

at May 16, 1995 (although this date is different from the date D.C. testified he included on his profile). (*Id*. at 421). Barrera testified that she asked him if he was going to turn 16 on May 16, 2011, and that D.C. stated he was. (*Id*. at 424-425). John also testified that D.C. claimed he was 16 years old prior to May 30, 2011. (Jury Trial Volume II Tr. at 371).

{¶13} Assuming *arguendo* that Barrera did not know D.C. was 15 years old on May 30, 2011, the evidence demonstrates that, at a minimum, she acted recklessly by "perversely disregard[ing] a known risk that such circumstances are likely to exist." R.C. 2901.22(C). Barrera admitted she knew D.C. was in the eighth grade in May 2011. (Jury Trial Volume III at 419-421). D.C. was friends with A.S., who was in the seventh grade. (*Id*. at 232). D.C. participated on a junior high track team for seventh and eighth grade students. (*Id*. at 238). D.C. also participated in a baseball league limited to 13 and 14-year-olds. (*Id*. at 240). Barrera's fiancé, John, was a coach in D.C.'s league and his son, A.S., also played in the league. (*Id*.). Barrera thus disregarded a known risk that D.C. was younger than his Facebook profile indicated. Consequently, we cannot find that her conviction for unlawful sexual conduct with a minor is against the manifest weight of the evidence.

{¶14} Barrera's first assignment of error is, therefore, overruled.

**Assignment of Error No. II**

**Defendant-appellant was denied effective assistance of counsel, and due process of law in violation of her rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article One, Section Ten of the Ohio Constitution due to the failure of defense counsel to move for judgment of acquittal pursuant to Crim.R. 29.**

{¶15} In her second assignment of error, Barrera argues she was denied effective assistance of counsel because the evidence did not support her conviction and her counsel failed to move for a judgment of acquittal pursuant to Crim.R. 29.

{¶16} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 142, citing *Strickland*, 466 U.S. at 691. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bradley* at 142; *Strickland* at 694.

{¶17} "Failure to move for an acquittal under Crim.R. 29 is not ineffective assistance of counsel, where the evidence in the state's case demonstrates that reasonable minds can reach different conclusions as to whether the elements of the

charged offense have been proven beyond a reasonable doubt, and that such a motion would have been fruitless." *State v. Schlosser*, 3d Dist. No. 14-10-30, 2011-Ohio-4183, ¶ 35, citing *State v. Giddens*, 3d Dist. No. 1-02-52, 2002-Ohio-6148, ¶ 27. We have already determined Barrera's conviction is supported by the manifest weight of the evidence. Thus, reasonable minds could determine that the charged offense had been proven beyond a reasonable doubt and the motion would have been fruitless. We cannot find that Barrera was denied effective assistance of counsel.

{¶18} Barrera's second assignment of error is, therefore, overruled.

### Assignment of Error No. III

**The trial court abused its discretion by sentencing the appellant to a maximum sentence of a three-year prison term when that sentence does not meet the requirements set forth in Ohio Revised Code Section 2929.14.**

{¶19} In her third assignment of error, Barrera argues the trial court erred by sentencing her to three years imprisonment because it is the maximum sentence for a felony of the third degree. Barrera contends the trial court abused its discretion by imposing the sentence because she is a first time offender, the sexual relationship between Barrera and the victim was consensual, and that although she was a coach at the victim's school, she was not his coach so she was not in a position of trust or responsibility towards the victim.

{¶20} A trial court's sentence will not be disturbed on appeal absent a defendant's showing by clear and convincing evidence that the sentence is unsupported by the record or otherwise contrary to law. R.C. 2953(G)(2). The appellate court "shall review the record, including the findings underlying the sentence or modification given by the sentencing court. The appellate court may increase, reduce, or otherwise modify a sentence." *Id.* A felony sentence should be reasonably calculated to achieve the purposes of sentencing, which are to protect the public from future crimes by the offender and to punish the offender. R.C. 2929.11. The sentence should also be commensurate with the seriousness of the offender's conduct, recognize the impact upon the victim, and be consistent with sentences imposed for similar crimes committed by similar offenders. *Id.* An appellate court should not, however, substitute its judgment for that of the trial court because the trial court is "'clearly in the better position to judge the defendant's dangerousness and to ascertain the effect of the crimes on the victims.'" *State v. Watkins*, 3d Dist. No. 2-04-08, 2004-Ohio-4809, ¶ 16, quoting *State v. Jones*, 93 Ohio St.3d 391, 400 (2001).

{¶21} Barrera was convicted of unlawful sexual conduct with a minor in violation of 2907.04(A), and the jury also found that Barrera was ten or more years older than her victim pursuant to 2907.04(B)(3), resulting in a felony of the third degree. R.C. 2907.04. The trial court sentenced Barrera on December, 6,

2011, after the effective date of H.B. 86. (Doc. No. 56); *State v. Hites*, 3d Dist. No. 6-11-07, 2012-Ohio-1892, ¶ 11. Consequently, the trial court could sentence Barrera to a prison term of twelve, eighteen, twenty-four, thirty-six, forty-two, forty-eight, fifty-four, or sixty months. R.C. 2929.14(3)(a). Barrera's sentence of three years imprisonment, the equivalent of thirty-six months, is within the statutory range and not the maximum sentence that she could have received for the offense.

{¶22} The trial court was also required to consider the factors contained in R.C. 2929.12, which include, in pertinent part, that the defendant's conduct is more serious than conduct normally constituting the offense when "[t]he offender's relationship with the victim facilitated the offense" and when "[t]he offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice." Barrera, who developed a relationship with D.C. because she was a parental figure in A.S.'s home, used the time D.C. spent at her house to facilitate the offense. Barrera was also a coach at the local high school, which was connected to the junior high, and had a responsibility to protect the school's students from sexual abuse. Finally, the trial court found that Barrera maintained a continual relationship with the victim that was at least partially sexual, showed a lack of remorse for the offense, and blamed the victim for her actions. (Sentencing Tr. at 17-19). In response to a question

regarding how the victim felt about the offense, Barrera responded that it was the "best day of his life." (*Id*. at 18). The trial court stated to Barrera, "that you are taking zero responsibility for your actions. You're blaming the victim, who was a 15-year old individual. The statute, as I pointed out, is designed to protect individuals of this age, you being a 33-year old individual who took advantage of him." (*Id*.). We cannot find that the trial court erred by imposing a three year prison sentence in light of the seriousness of Barrera's conduct.

{¶23} Barrera's third assignment of error is, therefore, overruled.

{¶24} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and ROGERS, J., concur.**

**/jlr**